# EXHIBIT A

_Bryant_

| STATE OF TENNESSEE<br>6TH JUDICIAL DISTRICT<br>CHANCERY COURT | **SUMMONS** | FILED | CASE FILE NUMBER<br>187383-2 |
|---|---|---|---|

| PLAINTIFF<br>FIRST MERCURY INSURANCE COMPANY | DEFENDANT<br>SWS, LLC d/b/a SECUREWATCH d/b/a SECURE<br>AUTOMATION, INC.; ADT, LLC d/b/a ADT SECURITY<br>SERVICES; and NICOLE HEARN 2:30 |
|---|---|

TO: (NAME AND ADDRESS OF DEFENDANT)

ADT, LLC d/b/a ADT Security Services
c/o CT Corporation System, Registered Agent
800 South Gay Street, Suite 2021
Knoxville, Tennessee 37929-9710

HOWARD G. HOGAN    Method of Service:

☐ Certified Mail
☒ Knox Co. Sheriff
☐ *Comm. Of Insurance
☐ *Secretary of State
☐ *Out of County Sheriff
☐ Private Process Server
☐ Other
   *Attach Required Fees

List each defendant on a separate summons.

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, KNOX COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br><br>William H. Tate<br>201 Fourth Avenue North, Suite 1900<br>Nashville, TN 37219<br>615-256-1125 | FILED, ISSUED & ATTESTED<br>4-25-14 |
|---|---|
| | **By:**     **HOWARD G. HOGAN, Clerk and Master**<br>**400 Main Street, Suite 125**<br>**Knoxville, TN 37902**<br><br>_Howard G Hogan_ |

### NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing. The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: | DATE RECEIVED |
|---|---|
| | |
| | Sheriff    _W C Bryant_ #B1864 |



**ADA**
FOR ASSISTANCE CALL
865 / 215-2952
TTY: 865 / 215-2497

## RETURN ON SERVICE OF SUMMONS

Served Special Assistant Secreta...
Service of Process to C.T. Corpora...
System  ...e Registered Agent for

**ADT LLC**

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served _____  ☐ Not Found _____
☐ Not Served _____  ☐ Other _____  **Company**

LINDSEY CUPP

DATE OF RETURN:      MAY 13 2014     By: _____ W C Bryant / #B1864

Sheriff/or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return

receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to

the defendant _____. On the _____ day of _____, 20___, I received the return

receipt, which had been signed by _____ on the _____ day of _____, 20___.

The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

| | |
|---|---|
| Sworn to and subscribed before me on this _____ day of _____ , 20___. <br> Signature of _____ Notary Public or _____ Deputy Clerk <br><br> My Commission Expires: | Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process. |

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

    Mail list to: Clerk & Master
               400 West Main Street, Rm 125
               Knoxville, TN 37902

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

| | |
|---|---|
| I, Howard G. Hogan, Clerk & Master of the Chancery Court in the State of Tennessee, Knox County, do certify this to be a true and correct copy of the original summons issued in this case. | HOWARD G. HOGAN, Clerk & Master <br><br> By: <br><br><br>                     D.C. & M. |

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

FILED
2014 APR 25 PM 2:30
HOWARD G. HOGAN

| | |
|---|---|
| FIRST MERCURY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  No. 18 7383-2 |
| SWS, LLC d/b/a SECUREWATCH d/b/a SECURE AUTOMATION, LLC; ADT, LLC d/b/a ADT SECURITY SERVICES; and NICOLE HEARN | ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes the Plaintiff, First Mercury Insurance Company (hereafter "First Mercury"), pursuant to T.C.A. § 29-14-101, *et seq.,* and Rule 57 of the Tennessee Rules of Civil Procedure, and files this Complaint for Declaratory Judgment seeking to have the rights and obligations of the parties declared under a policy of insurance and for its cause of action states as follows:

### PARTIES

1.     First Mercury is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Southfield, Michigan. First Mercury is eligible to do business as an excess and surplus insurer in Tennessee.

2.     SWS, LLC d/b/a SecureWatch d/b/a  Secure Automation, LLC is a Tennessee Limited Liability Company (collectively referred to hereinafter as "SWS") with its headquarters and principal place of business located at 507 South Gay Street, Knoxville, Tennessee 37902.

1

3. ADT, LLC d/b/a ADT Security Services is a Delaware corporation authorized to conduct business in the State of Tennessee under the names ADT, LLC d/b/a ADT Security Services (collectively referred to hereinafter as "ADT"). ADT may be served through its registered agent, CT Corporation System, Suite 2021, 800 South Gay Street, Knoxville, Tennessee 37929-9710.

4. On or about December 12, 2013, Nicole Hearn (hereinafter "Hearn") filed a Complaint (hereinafter the "Hearn Complaint") in the Circuit Court for Hillsborough County, Florida against ADT, LLC d/b/a ADT Security Services, SWS, LLC d/b/a Secure Automation, LLC f/k/a Securewatch alleging personal injuries and other damages suffered by Hearn as a result of the sexual assault and attack perpetrated upon Hearn by Rashad Hales (hereinafter "Hales") which occurred on December 30, 2011. A copy of the Hearn Complaint is attached hereto as Exhibit A.

5. The Hearn Complaint alleges that Hales was an employee of both SWS and ADT, that ADT was negligent in its training and supervision of Hales and that SWS is liable for the acts of Hales under the theories of respondeat superior and vicarious liability. The Hearn Complaint further alleges that as the result of Hales' criminal acts that Hearn suffered personal injuries, the physical restraint of her liberty and other damages.

6. Hales was charged and convicted of felony sexual battery and is currently serving a lengthy term of incarceration in state prison.

7. First Mercury issued a policy of Commercial General Liability Insurance No. FMMI024868 to the named insured SWS LLC (DBA) Securewatch for the period of 03/15/2011 to 03/15/2012 (hereinafter "the Policy"). A Certified copy of the Policy is attached hereto as

2

Exhibit C and is incorporated herein by reference as if fully set forth.

8. The First Mercury Policy was issued to SWS located at 507 South Gay Street, Knoxville, Tennessee 37902 by the producer WMG Casualty located at 620 Mabry Hood Road, Suite 201, Knoxville, Tennessee 37932.

9. As the result of the fact that the First Mercury Policy was issued in Knoxville, Tennessee to SWS, LLC, a Tennessee Limited Liability Company by a producer located in Knoxville, Tennessee, the First Mercury policy is construed and enforced in accordance with Tennessee law.

10. The Policy provides commercial general liability insurance coverage to the named insured and to any qualifying additional insureds pursuant to the terms, conditions, exclusions and endorsements contained in the First Mercury Policy.

11. The Policy was amended by Endorsement CG 00 57 09 99 as follows:

> **AMENDMENT OF INSURING AGREEMENT- KNOWN INJURY OR DAMAGE**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)
>
> Paragraph 1. **Insuring Agreement** of **Section I – Coverage** A – Bodily Injury And Property Damage **Liability** is replaced by the following:
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

3

(1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

· · ·

12.    The First Mercury Policy excludes criminal acts as provided by the **Exclusion for Criminal Acts**, Endorsement CVX GL 0312(10/90) a complete copy of which is attached hereto as Exhibit B and which provides in pertinent part the following:

## EXCLUSION . . . CRIMINAL ACTS

. . .

Notwithstanding anything to the contrary contained in the policy . . . it is agreed that this insurance does not apply to:

A. "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" arising out of any actual or alleged

    "criminal act,"

. . .

1.  by any insured; **or**

2.  by any employee of any insured; **or**

3.  by any person or entity for whom any insured is legally liable; **or**

4.  arising out of, caused by, or related to the employment practices of any insured including, but not limited to, negligent hiring, negligent hiring practices, negligent training, or negligent supervision; **or**

4

5. arising out of and in the course of, or as a consequence of, employment by any insured; or

6. arising out of and in the course of, or as a consequence of, association with any insured.

This exclusion applies:

(a) whether any insured may or may not be liable as an employer or in any other capacity; and

(b) to any obligation to contribute to shared damages with repay or indemnify someone else who must pay damages because of the "Bodily Injury," "Property Damage," "Personal Injury," or "Advertising Injury."

"Criminal Act" means any act committed in violation of a law prohibiting it, or omitted in violation of a law ordering it.

. . . .

It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits related to the above described activities which claim, demand or suit advocates any theory of liability, whether sounding in, or alleging tort, or in contract. There shall further be no duty or obligation on the part of the Company to respond to, investigate, or defend anyone for any such claim, demand or suit.

13. There is no duty to defend and there is no coverage with respect to the claims made in the Hearn Complaint under the First Mercury Policy.

14. On or about March 14, 2014, First Mercury sent correspondence to SWS and ADT reserving all of its rights, copies of which are attached hereto as Exhibits D and E. Despite the lack of a duty to defend under the Policy, First Mercury has been providing a defense to SWS and ADT with respect to the Hearn Complaint.

5

15.     First Mercury is entitled to a declaratory judgment that there is no duty to defend and no coverage with respect to the Policy and is further entitled to a declaratory judgment that it is entitled to withdraw from the defense of SWS and ADT with respect to the Hearn Complaint.

WHEREFORE, premises considered, First Mercury Insurance Company respectfully prays:

1.     That the Court declare that First Mercury Insurance Company has no coverage and no duty to defend with respect to the Hearn Complaint attached hereto as Exhibit A.

2.     That the Court declare that First Mercury Insurance Company is entitled to withdraw from the defense of SWS, LLC d/b/a SecureWatch d/b/a Secure Automation, LLC and ADT, LLC d/b/a ADT Security Services.

3.     That the Court grant First Mercury Insurance Company such other and further relief as the Court may deem just and appropriate, including the costs of this cause.

Respectfully submitted:

**Howard Tate Sowell Wilson**
**Leathers & Johnson, PLLC**

William H. Tate, Esq., No. 6797
201 Fourth Avenue, North, Suite1900
Nashville, Tennessee 37219
(615) 256-1125
*Attorneys for First Mercury Insurance Company*

6

# IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

| | | |
|---|---|---|
| FIRST MERCURY INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. |
| SWS, LLC d/b/a SECUREWATCH d/b/a SECURE AUTOMATION, LLC; ADT, LLC d/b/a ADT SECURITY SERVICES; and NICOLE HEARN | ) | |
| Defendants. | ) | |

## COST BOND

Pursuant to T.C.A. §20-12-120 et seq., I hereby acknowledge myself as surety for the costs in the above styled cause for an amount not to exceed $1000.00.

This the 23 day of April, 2014.

_William H. Tate, No. 6797_
**Howard Tate Sowell Wilson**
**Leathers & Johnson, PLLC**
201 Fourth Avenue North, Suite 1900
Nashville, Tennessee 37219
(615) 256-1125

*Attorneys for First Mercury*
*Insurance Company*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

HEARN, NICOLE

        Plaintiff,                            CASE NO.
                                           Div.

v.

ADT LLC d/b/a ADT Security Services,
a foreign corporation, and
SWS, LLC d/b/a Secure Automation, LLC.
f/k/a Securewatch, a foreign corporation,

        Defendants.
_____/

## **COMPLAINT**

Plaintiff, NICOLE HEARN, by and through her undersigned attorneys, hereby sues the

Defendants, ADT LLC d/b/a ADT Security Services, a foreign corporation and SWS, LLC d/b/a

Secure Automation, LLC f/k/a Securewatch, and states:

## **JURISDICTIONAL ALLEGATIONS**

1.    This is an action against the Defendants, and each of them, for damages in excess of

$15,000.00.

2.    At all times material hereto, Plaintiff, NICOLE HEARN ("Ms. HEARN") was a resident

of Hillsborough County, Florida.

3.    At all times material hereto, Defendant, ADT LLC is a foreign corporation authorized to

conduct business in the State of Florida under the names of ADT and ADT Security Services,

Inc. (collectively referred to hereinafter as "ADT"). ADT's headquarters is located at 1501

Yamato Road, Boca Raton, FL 33431-4438 and ADT has multiple business locations in

Hillsborough County and surrounding Tampa Bay areas.

1

EXHIBIT
A

4.    At all times material hereto, Defendant, SWS, LLC d/b/a Secure Automation, LLC f/k/a

Securewatch, is a foreign corporation authorized to conduct business in the State of Florida

under the names of SWS, LLC, Securewatch, Saber Promotions and Secure Automation

(collectively referred to hereinafter as "SWS"). SWS's headquarters is located at 507 S. Gay St.,

Suite 200, Knoxville, TN 37902.

5.    All events material to this action occurred in Hillsborough County, Florida.

## COMMON ALLEGATIONS

6.    ADT is a security services company in the business of selling, installing, maintaining and

monitoring security systems, including burglar alarm systems, for residential and commercial

uses.

7.    ADT markets its products and services to potential residential customers through direct

sales, among other sales methods. In its direct sales, ADT sends its employees out to previously

designated residential neighborhoods to solicit residences via unannounced, or "cold call" door

to door sales, in which the ADT salespeople canvass a particular neighborhood knocking on

doors and delivering a pre-approved sales speech or sales script, developed and provided by

ADT to its sales force for this purpose.

8.    At all times material hereto, SWS was an authorized, licensed dealer or distributor of

ADT products and services, which marketed and sold ADT security products and services using

the ADT logo and ADT marketing and using ADT-approved sales techniques.

9.    At all times material hereto, SWS recruited, hired, trained and employed personnel to sell

ADT products under the auspices of ADT and using ADT-approved uniforms, ADT equipment

and ADT marketing materials, along with clothing and sales materials bearing the SECURE

WATCH company name and logo. SWS hired salespeople to market and sell ADT products and

2

services using ADT-approved sales methods; ADT-approved sales scripts; ADT-approved sales techniques and sales methods; and employing or facilitating ADT training methods.

10.    For all practical purposes, SWS salespeople were, in fact, ADT salespeople and at all times material hereto, were acting as the authorized representatives, employees and agents of ADT.

11.    During its door to door solicitations in residential neighborhoods, SWS / ADT sales personnel are transported in SWS /ADT company vehicles to the neighborhood and dropped off with instructions to make door to door sales calls on the residences in that neighborhood and to then meet back at a pre-designated location to be picked up in the SWS /ADT vehicles.

12.    During these sales calls, ADT/ SWS personnel are dressed in ADT uniforms, including shirts bearing the ADT logo and the SWS company name, and are supplied with ADT and/or SWS promotional materials with company logos and letterheads; including ADT sales brochures, ADT clipboards, ADT business cards, and various other ADT/ SWS labeled materials. ADT/ SWS sales personnel are also provided with a sign bearing the ADT logo, which the salesperson is instructed to plant in the yard of the residence they are visiting to let other ADT salespeople know that the residence has already been visited. While the ADT/ SWS sales person is inside the residence, the salesperson is instructed to turn the sign inward, facing the residence, so that other SWS /ADT salespeople know that there is a ADT/ SWS person inside the home.

13.    ADT / SWS salespeople are taught to go directly to the front door of the residence and to make a sales pitch to the owner. They are instructed to make every effort to gain access and entry into the residence so as to make their sales pitch stronger and to increase the chances of making a sale of ADT products and services to the homeowner.

3

14.    New or inexperienced ADT/ SWS sales people were transported in SWS /ADT vehicles to neighborhoods with known lower median incomes in which the residents were unlikely to be able to afford to purchase ADT security products or services. Such lower-income neighborhoods included mobile home neighborhoods and neighborhoods such as that of the Plaintiff, NICOLE HEARN, in and around Hillsborough County. The reason and purpose for taking newer salespeople to such neighborhoods where sales were unlikely, was to train the ADT sales people on residents and homeowners who ADT and SWS believed were not viable purchasers anyway. In this manner, the ADT/ SWS sales force could make mistakes and irritate homeowners without prejudicing a potential sale. Then, after training on these lower-income neighborhoods, the ADT/ SWS sales personnel could be taken to higher-income residential neighborhoods after polishing their sales presentations on those homeowners who could not afford ADT/ SWS products in the first place.

15.    In late 2011, a man named Rashad Hales (Hales), not a party to this action, applied for employment as a SWS / ADT sales representative with ADT through its licensed, authorized representative, SWS.

16.    In late 2011, Hales was hired as an ADT sales representative. As an ADT sales representative, both ADT and SWS knew that Hales would be expected to make unannounced sales calls at the homes of people in neighborhoods designated by ADT. Hales was expected to have regular and frequent personal contact with Hillsborough County homeowners and was expected to sell them ADT products and services. In fact, Hales was employed on a commission basis, with his pay being directly dependent on his successful sales of ADT products and services to homeowners. As part of the job for which he was hired by ADT and/or SWS, Hales was trained, instructed, expected and encouraged to try to gain entrance inside the homes of potential

4

ADT customers and homeowners for the purpose of making a stronger and more effective sales pitch for ADT products. ADT and/or SWS knew, therefore, that Hales would have direct contact with homeowners; that he would be using ADT-developed and approved sales speeches and sales techniques to gain access inside the homes; and that Hales would necessarily gain private and personal information about the homeowners; such as who was home; who else lived in the residence; what time others could be expected to return home; and similar information not otherwise available to the general public or people who were not making ADT sales pitches to the homeowners.

17.    On December 30, 2011, Hales, along with a group of other ADT sales people, were transported in a SWS /ADT vehicle to NICOLE HEARN'S neighborhood in Hillsborough County. This neighborhood was one of the lower-income neighborhoods that ADT and SWS designated and used for training purposes without really expecting sales to be consummated. Hales and the other ADT/ SWS personnel were outfitted with ADT/ SWS uniforms and were supplied by ADT and SWS with various ADT-related brochures, sales materials, and equipment all prominently bearing the ADT logo and letterhead and also the SWS company name. The sales people were also provided with the ADT sign to be stuck in the lawn of the residence they were visiting.

18.    On December 30, 2011, Hales was dropped off by the ADT/ SWS supervisor in the neighborhood o NICOLE HEARN and instructed to begin making house calls on the residences for the purpose of practicing the SWS /ADT sales techniques. Hales was instructed to rendezvous with the supervisor in the SWS /ADT vehicle later in the day.

19.    During the afternoon hours of December 30, 2011, Hales approached the residence of Plaintiff NICOLE HEARN ("Ms. HEARN") and, as instructed by SWS and/or ADT, knocked on

5

Ms. HEARN'S front door, identifying himself as a SWS and/or ADT employee and sales person. Ms. HEARN told Hales that her boyfriend was the one in the household who made the purchase decisions for items such as security systems and closed the door. Within minutes, Hales reappeared at Ms. HEARN'S front door, again representing himself as the SWS /ADT sales person. When Ms. HEARN opened her front door, Hales forced his way into the home, armed himself with a knife, and viciously attacked Ms. HEARN, committing numerous sexual assaults and batteries on her over the course of the remainder of the afternoon, causing her severe physical and psychological injuries and threatening to kill her is she told anyone what he had done.

20.     Upon escaping from Ms. HEARN'S residence after assaulting her, Hales returned to the SWS /ADT van, where he announced to his supervisor that he had just raped someone and that he needed to escape from the area. The SWS /ADT supervisor and other sales people got out of the SWS /ADT vehicle, locking Hales inside and notifying law enforcement, which arrested Hales.

21.     Hales was subsequently charged and convicted in Hillsborough County Court of felony sexual battery and is currently serving a lengthy term of incarceration in state prison.


## COUNT I
## NEGLIGENT HIRING
### (ADT)

22.     Plaintiff readopts and realleges the allegations set forth in paragraphs 1 through 21 as if fully set forth herein and further states:

23.     ADT is the largest company of its kind in the nation. It boasts a 135 year company history and claims over 400 authorized agent offices, 16,000 employees nationwide and some 6.4 million customers. As such, ADT has extensive experience in the marketing and selling of its

6

security-related products and services and knew, or should have known, that its sales people were trained and expected to have frequent and regular contact with members of the public in their homes. In fact, ADT sales personnel are trained in making door to door calls on homeowners, such as Ms. HEARN, and are encouraged and expected to try to gain entrance to the home of the sales prospect in order to strengthen their sales pitch. ADT instructs its salespeople to use and rely on the ADT national name and reputation as a security provider in their contacts with homeowners in order to gain access into the home for the purpose of consummate sales of ADT security-related products.

24.    ADT had a duty to conduct a thorough background check and pre-employment investigation of all prospective sales employees who would be making sales calls at the personal residences of prospective customers, such as Ms. HEARN. This duty on the part of ADT should have been commensurate with the potential risk to members of the public and to potential customers posed by persons such as Rashad Hales, who were unsuitable for such a position. ADT's duty in this regard is based on the fact that ADT instructs its sales employees to go unannounced to people's homes and to try to gain an invitation into the home so that the employees can make the ADT sales presentation. As such, ADT knows that its employees will have regular and frequent direct contact with members of the public as a primary component of their job with ADT and that these employees will, in each case, be attempting to gain access inside the customer's home in order to inspect the premises to see what ADT security-related products might be used in the home and to make their sales presentations from inside the home. ADT also encourages its sales employees to use the company's nationally known name and long history as a security provider in order to make prospective customers feel more secure, more at ease with the salesperson, and more likely to allow the ADT salesperson into their home.

7

25.    ADT hired Hales without conducting a thorough or complete background investigation or pre-employment check.  At a minimum, an appropriate background check on Hales given his expected level of interaction with the public and his expected access to the personal residences of ADT customers would have included a criminal records check; contacts and interviews with previous employers; contacts and interviews with personal references; credit checks; verification of information provided by Hales on his employment application; in-depth personal interviews by more than one ADT manager or supervisor; psychological testing and evaluations; and a probationary period of closely-supervised sales calls and training prior to allowing Hales to call on customers alone.

26.    ADT hired Hales without conducting a thorough and appropriate background check and without appropriate pre-employment testing, interviewing and/or verifications.  Had ADT conducted a thorough and appropriate background check and investigation, it would have learned or been put on notice that Hales was not an appropriate candidate for a sales position that required extensive customer contact and regular and frequent direct sales calls to the homes of prospective customers. As such, ADT breached its duty and was negligent in its hiring of Hales.

27.    As a direct and proximate cause of ADT'S breach of its aforementioned duty with regard to the hiring of Hales, ADT hired Hales and placed Hales in a position whereby he had access to Ms. HEARN and to her home while clothed with the apparent trustworthiness of a nationally recognizable security company – ADT – which Hales was then able to use to obtain information that Ms. HEARN was alone in the home and potentially vulnerable.  Hales then used the information acquired by his status and position as a ADT representative or employee to forcibly gain entry to Ms. HEARN'S home and viciously attacked her.

8

28.     As the direct and proximate result of the actions of Rashad Hales undertaken during his

employment by or on behalf of ADT, Ms. HEARN suffered severe physical injuries, mental and

psychological injury and trauma, pain and suffering, physical restraint of her liberty, and

aggravation of a pre-existing injury.  In addition, Ms. HEARN suffered mental and emotional

anguish and embarrassment, loss of present and future earnings, loss of earning capacity and loss

of the capacity for the enjoyment of life, as well as additional economic damages in the form of

medical bills, and was forced to relocate to another state to avoid the trauma of the event and to

escape to a state in which the details of the attack on her were not well known.

WHEREFORE, Plaintiff, NICOLE HEARN demands damages against Defendant, ADT

and demands trial by jury.

**COUNT II**
**NEGLIGENT TRAINING AND SUPERVISION**
**(ADT)**

29.     Plaintiff readopts and re-alleges paragraphs 1 through 21, and 23 above as if fully set

forth and further alleges:

30.     At all times material hereto, ADT had a duty to properly train and supervise Hale to

ensure that he would be able to interact with members of the public during his ADT sales calls at

their private residences without placing the potential customers in danger.  Such training and

supervision should have included at a minimum:  supervised sales calls wherein Hales would be

instructed and monitored by more experienced ADT personnel prior to allowing him to operate

on his own; instruction as to appropriate interaction with potential customers; and closely

monitored sales activities by properly trained and experienced supervisory personnel during the

sales activities of employees such as Hale.

9

31.     ADT allowed Hales to operate on ADT'S behalf in Ms. HEARN'S neighborhood without proper training and/or supervision and, as such, ADT breached its duty and was negligent.

32.     As a direct and proximate cause of ADT'S breach of its aforementioned duty with regard to the training and supervision of Hales, ADT placed Hales in a position whereby he had unsupervised access to Ms. HEARN and to her home while clothed with the apparent trustworthiness of a nationally recognizable security company – ADT – which Hales was then able to use to obtain information that Ms. HEARN was alone in the home and which Hales then used to forcibly gain entry to Ms. HEARN'S home and viciously attacked her.

33.     As the direct and proximate result of the actions of Rashad Hales undertaken during his employment by or on behalf of ADT, Ms. HEARN suffered severe physical injuries, mental and psychological injury and trauma, pain and suffering, physical restraint of her liberty, and aggravation of a pre-existing injury. In addition, Ms. HEARN suffered mental and emotional anguish and embarrassment, loss of present and future earnings, loss of earning capacity and loss of the capacity for the enjoyment of life, as well as additional economic damages in the form of medical bills, and was forced to relocate to another state to avoid the trauma of the event and to escape to a state in which the details of the attack on her were not well known.

    WHEREFORE, Plaintiff, NICOLE HEARN demands damages against Defendant ADT and demands trial by jury.

**COUNT III**
**RESPONDEAT SUPERIOR**
**(ADT)**

34.     Plaintiff readopts and re-alleges paragraphs 1 through 21, and 23 above as if fully set forth and further alleges:

10

35.     At all times material hereto, Rashad Hales was employed by ADT to solicit residential homeowners at their homes to make sales presentations relating to ADT security-related equipment and systems for the benefit and profit of ADT.

36.     The process by which ADT instructed and expected its employees, including Rashad Hales, to make these sales calls was by making unannounced appearances at homeowner's front door and then attempting to gain entry into the home to make their sales presentation.

37.     The attack on Ms. HEARN by ADT employee Hales took place during Hales' work day and during the time he was supposedly being actively supervised by ADT. Hales' initial contact with Ms. HEARN was directed by ADT, as her residence was within the neighborhood area assigned to Hales by ADT. Additionally, ADT supplied Hales with the indicia of alleged respectability and trustworthiness by his being outfitted with a ADT uniform and ADT logos, materials and equipment, making it clear and obvious to the homeowners and to Ms. HEARN, that Hales was there as a representative of a well-known and respected national company that was in the business of providing security and safety to members of the public. At all times material, therefore, Hales was acting for the benefit of ADT and was in the service of ADT and his attack on Ms. HEARN took place within the time and space limits of Hales' employment with ADT.

38.     Because Hales' attack on Ms. HEARN was planned and consummated while Hales was in the service of ADT; because ADT furnished Hales with the information and the means by which the attack on Ms. HEARN was accomplished; because Hales was calling on Ms. HEARN as the result of being hired and directed to do so by ADT; and because Hales was acting at least in part by a purpose to serve ADT, Hales was at all times material hereto acting within the course and scope of his employment with ADT.

11

39.     As the direct and proximate result of the actions of Rashad Hales undertaken during his

employment by or on behalf of ADT, Ms. HEARN suffered severe physical injuries, mental and

psychological injury and trauma, pain and suffering, physical restraint of her liberty, and

aggravation of a pre-existing injury.   In addition, Ms. HEARN suffered mental and emotional

anguish and embarrassment, loss of present and future earnings, loss of earning capacity and loss

of the capacity for the enjoyment of life, as well as additional economic damages in the form of

medical bills, and was forced to relocate to another state to avoid the trauma of the event and to

escape to a state in which the details of the attack on her were not well known.

40.     ADT is responsible for the actions of Hales as described herein and for all harm resulting

to Ms. HEARN under respondeat superior.

WHEREFORE, Plaintiff, NICOLE HEARN demands damages against Defendant, ADT

and demands trial by jury.

## COUNT IV
## VICARIOUS LIABILITY
### (ADT)

41.     Plaintiff readopts and re-alleges paragraphs 1 through 21, 23, and 35 through 38 above as

if fully set forth and further alleges:

42.     All times material hereto, the conduct and actions of Rashad Hales in approaching and

interacting with Ms. HEARN were actions that were of the kind that Hales was hired by ADT to

perform.

43.     The conduct and actions of Rashad Hales in approaching and interacting with Ms.

HEARN all took place within the time and space parameters that were both authorized and

required by Hales' employment with or on behalf of ADT.

12

44.     The conduct and actions of Rashad Hales in approaching and interacting with Ms. HEARN were activated at least initially and at least in part, by Hales' purpose to serve ADT by selling ADT security related systems and equipment for the benefit and profit of ADT.

45.     The actions of Hales as described herein were at all times substantially aided and were made possible because of Hales' status as an employee or representative of ADT and because of Hales' relationship as an ADT servant, agent or employee.

46.     As the direct and proximate result of the actions of Rashad Hales undertaken during his employment by or on behalf of ADT, Ms. HEARN suffered severe physical injuries, mental and psychological injury and trauma, pain and suffering, physical restraint of her liberty, and aggravation of a pre-existing injury.  In addition, Ms. HEARN suffered mental and emotional anguish and embarrassment, loss of present and future earnings, loss of earning capacity and loss of the capacity for the enjoyment of life, as well as additional economic damages in the form of medical bills, and was forced to relocate to another state to avoid the trauma of the event and to escape to a state in which the details of the attack on her were not well known.

47.     ADT is vicariously liable and responsible for the actions of Hales as described herein and for all harm resulting to Ms. HEARN.

WHEREFORE, Plaintiff, NICOLE HEARN demands damages against Defendant, ADT and demands trial by jury.

**COUNT V**
**NEGLIGENT HIRING**
**(SWS)**

48.     Plaintiff readopts and re-alleges paragraphs 1 through 21, and 23, above as if fully set forth and further alleges:

13

49.     At all times material hereto, SWS was an authorized agent or dealer of ADT, selling and marketing ADT security products and systems via door to door direct sales and acted as the local agent, servant or representative of ADT.

50.     SWS hired or employed Rashad Hales for the purpose of soliciting, selling and marketing ADT security products and systems via door to door direct sales.

51.     SWS had a duty to conduct a thorough background check and pre-employment investigation of all prospective sales employees who would be making sales calls at the personal residences of prospective customers, such as Ms. HEARN. This duty on the part of SWS should have been commensurate with the potential risk to members of the public and potential customers posed by persons such as Rashad Hales, who were unsuitable for such a position. SWS's duty in this regard is based on the fact that SWS instructs its sales employees to go unannounced to people's homes and to try to gain an invitation into the home so that the employees can make their sales presentations of SWS /ADT security-related products and services. As such, SWS knows that its employees will have regular and frequent direct contact with members of the public as a primary component of their job with SWS and that these employees will, in each case, be attempting to gain access inside the customer's home in order to inspect the premises to see what SWS /ADT security-related products might be used in the home and to make their sales presentations from inside the home. SWS also encourages its sales employees to use ADT's nationally known name and long history as a security provider in order to make prospective customers feel more secure, more at ease with the salesperson, and more likely to allow the SWS salesperson into their home.

52.     SWS hired Hales without conducting a thorough or complete background investigation or pre-employment check. At a minimum, an appropriate background check on Hales given his

14

expected level of interaction with the public and his expected access to the personal residences of SWS customers would have included a criminal records check; contacts and interviews with previous employers; contacts and interviews with personal references; credit checks; verification of information provided by Hales on his employment application; in-depth personal interviews by more than one SWS manager or supervisor; psychological testing and evaluations; and a probationary period of supervised sales calls and training prior to allowing Hales to call on customers alone.

53.    SWS hired Hales without conducting a thorough and appropriate background check and without appropriate pre-employment testing, interviewing and/or verifications.    Had SWS conducted a thorough and appropriate background check and investigation, it would have learned or been put on notice that Hales was not an appropriate candidate for a sales position that required extensive customer contact and regular and frequent direct sales calls to the homes of prospective customers.  As such, SWS breached its duty and was negligent in its hiring of Hales.

54.    As a direct and proximate cause of SWS'S breach of its aforementioned duty with regard to the hiring of Hales, SWS hired Hales and placed Hales in a position whereby he had access to Ms. HEARN and to her home while clothed with the apparent trustworthiness of a nationally recognizable security company – ADT – which Hales was then able to use to obtain information that Ms. HEARN was alone in the home and potentially vulnerable.  Hales then used the information acquired by his status and position as a SWS /ADT representative or employee to forcibly gain entry to Ms. HEARN'S home and viciously attacked her.

55.    As the direct and proximate result of the actions of Rashad Hales undertaken during his employment by or on behalf of SWS, Ms. HEARN suffered severe physical injuries, mental and psychological injury and trauma, pain and suffering, physical restraint of her liberty, and

15

aggravation of a pre-existing injury. In addition, Ms. HEARN suffered mental and emotional anguish and embarrassment, loss of present and future earnings, loss of earning capacity and loss of the capacity for the enjoyment of life, as well as additional economic damages in the form of medical bills, and was forced to relocate to another state to avoid the trauma of the event and to escape to a state in which the details of the attack on her were not well known.

WHEREFORE, Plaintiff, NICOLE HEARN demands damages against Defendant, SWS and demands trial by jury.

## COUNT VI
## NEGLIGENT TRAINING AND SUPERVISION
## (SWS)

56.     Plaintiff readopts and re-alleges paragraphs 1 through 21, and 23 above as if fully set forth and further alleges:

57.     At all times material hereto, SWS had a duty to properly train and supervise Hale to ensure that he would be able to interact with members of the public during his sales calls at their private residences without placing the potential customers in danger. Such training and supervision should have included at a minimum: supervised sales calls wherein Hales would be instructed and monitored by more experienced SWS personnel prior to allowing him to operate on his own; instruction as to appropriate interaction with potential customers; and closely monitored sales activities by properly trained and experienced supervisory personnel during the sales activities of employees such as Hale.

58.     SWS allowed Hales to operate on it's behalf in Ms. HEARN'S neighborhood without proper training and/or supervision and, as such, SWS breached its duty and was negligent.

59.     As a direct and proximate cause of SWS's breach of its aforementioned duty with regard to the training and supervision of Hales, SWS placed Hales in a position whereby he had

16

unsupervised access to Ms. HEARN and to her home while clothed with the apparent trustworthiness SWS, who was acting on behalf of a nationally recognizable security company – ADT – which Hales was then able to use to obtain information that Ms. HEARN was alone in the home and which Hales then used to forcibly gain entry to Ms. HEARN'S home and viciously attacked her.

60.     As the direct and proximate result of the actions of Rashad Hales undertaken during his employment by or on behalf of SWS, Ms. HEARN suffered severe physical injuries, mental and psychological injury and trauma, pain and suffering, physical restraint of her liberty, and aggravation of a pre-existing injury. In addition, Ms. HEARN suffered mental and emotional anguish and embarrassment, loss of present and future earnings, loss of earning capacity and loss of the capacity for the enjoyment of life; as well as additional economic damages in the form of medical bills, and was forced to relocate to another state to avoid the trauma of the event and to escape to a state in which the details of the attack on her were not well known.

WHEREFORE, Plaintiff, NICOLE HEARN demands damages against Defendant SWS and demands trial by jury.

### COUNT VII
### RESPONDEAT SUPERIOR
### (SWS)

61.     Plaintiff readopts and re-alleges paragraphs 1 through 21, and 23 above as if fully set forth and further alleges:

62.     At all times material hereto, Rashad Hales was employed by SWS to solicit residential homeowners at their homes to make sales presentations relating to SWS /ADT security-related equipment and systems for the benefit and profit of SWS and ADT.

17

63. The process by which SWS instructed and expected its employees, including Rashad Hales, to make these sales calls was by making unannounced appearances at homeowner's front door and then attempting to gain entry into the home to make their sales presentation.

64. The attack on Ms. HEARN by SWS employee Hales took place during Hales' work day and during the time he was supposedly being actively supervised by SWS. Hales' initial contact with Ms. HEARN was directed by SWS, as her residence was within the neighborhood area assigned to Hales by SWS. Additionally, ADT supplied Hales with the indicia of alleged respectability and trustworthiness by his being outfitted with an ADT/ SWS uniform and ADT/ SWS logos, materials and equipment, making it clear and obvious to the homeowners and to Ms. HEARN, that Hales was there as a representative of a well-known and respected national company that was in the business of providing security and safety to members of the public. At all times material, therefore, Hales was acting for the benefit of SWS and ADT and was in the service of SWS and ADT and his attack on Ms. HEARN took place within the time and space limits of Hales' employment with SWS.

65. Because Hales' attack on Ms. HEARN was planned and consummated while Hales was in the service of SWS; because SWS furnished Hales with the information and the means by which the attack on Ms. HEARN was accomplished; because Hales was calling on Ms. HEARN as the result of being hired and directed to do so by SWS; and because Hales was acting at least in part by a purpose to serve SWS, Hales was at all times material hereto acting within the course and scope of his employment with SWS.

66. As the direct and proximate result of the actions of Rashad Hales undertaken during his employment by or on behalf of SWS, Ms. HEARN suffered severe physical injuries, mental and psychological injury and trauma, pain and suffering, physical restraint of her liberty, and

18

aggravation of a pre-existing injury. In addition, Ms. HEARN suffered mental and emotional anguish and embarrassment, loss of present and future earnings, loss of earning capacity and loss of the capacity for the enjoyment of life, as well as additional economic damages in the form of medical bills, and was forced to relocate to another state to avoid the trauma of the event and to escape to a state in which the details of the attack on her were not well known.

67.     SWS is responsible for the actions of Hales as described herein and for all harm resulting to Ms. HEARN under respondeat superior.

        WHEREFORE, Plaintiff, NICOLE HEARN demands damages against Defendant, SWS and demands trial by jury.

## COUNT VIII
## VICARIOUS LIABILITY
## (SWS)

68.     Plaintiff readopts and re-alleges paragraphs 1 through 21, and 23, and 62 through 65 above, as if fully set forth and further alleges:

69.     All times material hereto, the conduct and actions of Rashad Hales in approaching and interacting with Ms. HEARN were actions that were of the kind that Hales was hired by SWS to perform.

70.     At all times material hereto, Rashad Hales was employed by SWS to solicit residential homeowners at their homes to make sales presentations relating to ADT security-related equipment and systems for the benefit and profit of SWS and ADT.

71.     The process by which SWS instructed and expected its employees, including Rashad Hales, to make these sales calls was by making unannounced appearances at homeowner's front door and then attempting to gain entry into the home to make their sales presentation.

19

72. The attack on Ms. HEARN by SWS employee Hales took place during Hales' work day and during the time he was supposedly being actively supervised by SWS. Hales' initial contact with Ms. HEARN was directed by SWS, as her residence was within the neighborhood area assigned to Hales by SWS. Additionally, SWS supplied Hales with the indicia of alleged respectability and trustworthiness by his being outfitted with a SWS /ADT uniform and SWS /ADT logos, materials and equipment, making it clear and obvious to the homeowners and to Ms. HEARN, that Hales was there as a representative of a well-known and respected national company that was in the business of providing security and safety to members of the public. At all times material, therefore, Hales was acting for the benefit of SWS and was in the service of SWS and his attack on Ms. HEARN took place within the time and space limits of Hales' employment with SWS.

73. The conduct and actions of Rashad Hales in approaching and interacting with Ms. HEARN all took place within the time and space parameters that were both authorized and required by Hales' employment with or on behalf of SWS.

74. The conduct and actions of Rashad Hales in approaching and interacting with Ms. HEARN were activated at least initially and at least in part, by Hales' purpose to serve SECURE WATCH by selling SWS /ADT security related systems and equipment for the benefit and profit of SWS and ADT.

75. The actions of Hales as described herein were at all times substantially aided and were made possible because of Hales' status as an employee or representative of SWS and because of Hales' relationship as a SWS servant, agent or employee.

76. As the direct and proximate result of the actions of Rashad Hales undertaken during his employment by or on behalf of SWS, Ms. HEARN suffered severe physical injuries, mental and

20

psychological injury and trauma, pain and suffering, physical restraint of her liberty, and aggravation of a pre-existing injury. In addition, Ms. HEARN suffered mental and emotional anguish and embarrassment, loss of present and future earnings, loss of earning capacity and loss of the capacity for the enjoyment of life, as well as additional economic damages in the form of medical bills, and was forced to relocate to another state to avoid the trauma of the event and to escape to a state in which the details of the attack on her were not well known.

77.    SWS is vicariously liable and responsible for the actions of Hales as described herein and for all harm resulting to Ms. HEARN.

WHEREFORE, Plaintiff, NICOLE HEARN demands damages against Defendant, SWS and demands trial by jury.

Dated: December 12, 2013                    Respectfully Submitted,


    /s/ Barry A. Cohen
BARRY A. COHEN, ESQ.
Florida Bar No. 0096478
MICHAEL W. GAINES, ESQ.
Florida Bar No. 775614
THE COHEN LAW GROUP
201 E. Kennedy Boulevard, Suite 1000
Tampa, Florida 33602
Work: (813) 225-1655; Fax: (813) 225-1921
bcohen@tampalawfirm.com
mgaines@tampalawfirm.com
jhalle@tampalawfirm.com
Attorneys for Plaintiff

21

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION
## PUNITIVE OR EXEMPLARY DAMAGES
## CRIMINAL ACTS, DECEPTIVE OR FRAUDULENT TRADE PRACTICES

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding anything to the contrary contained in the policy to which this endorsement attaches, or any endorsement scheduled on the declarations of this policy, or any endorsement subsequently attached to this policy, it is agreed that this insurance does not apply to:

A. "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" arising out of any actual or alleged

"criminal act," **or**

deceptive or fraudulent trade practice, **or**

violation of the Racketeering Influenced and Corrupt Organization Act or any similar act, whether Federal, State or Municipal, **or**

unfair business practice, trade practice or similar activity:

1. by any insured; **or**

2. by any employee of any insured; **or**

3. by any person or entity for whom any insured is legally liable; **or**

4. arising out of, caused by, or related to the employment practices of any insured including, but not limited to, negligent hiring, negligent hiring practices, negligent training, or negligent supervision; **or**

5. arising out of and in the course of, or as a consequence of, employment by any insured; **or**

6. arising out of and in the course of, or as a consequence of, association with any insured.

This exclusion applies:

(a) whether any insured may or may not be liable as an employer or in any other capacity; and

(b) to any obligation to contribute to, share damages with, repay or indemnify someone else who must pay damages because of the "Bodily Injury," "Property Damage," "Personal Injury," or "Advertising Injury."

"Criminal Act" means any act committed in violation of a law prohibiting it, or omitted in violation of a law ordering it.

B. Any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages.

It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits related to the above described activities which claim, demand or suit advocates any theory of liability, whether sounding in, or alleging tort, or in contract. There shall further be no duty or obligation on the part of the Company to respond to, investigate, or defend anyone for any such claim, demand or suit.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative)



CVX-GL-0312 (10/90)

I certify that the attached document is a true and complete copy of

Policy Number__FMMI024868_____Effective_____3-15-2011/3-15-2012_____.

Date__February 21, 2014_____

Ronald P. Harrell
Vice President, Claims
First Mercury Insurance Company

EXHIBIT

C

# FIRST MERCURY INSURANCE COMPANY

(A STOCK COMPANY)

STATUTORY HOME OFFICE: ONE SOUTH WACKER DRIVE, SUITE 2740, CHICAGO, IL 60606

ADMINISTRATIVE OFFICE: 26600 TELEGRAPH RD., SOUTHFIELD, MI 48033

## COMMERCIAL GENERAL LIABILITY DECLARATIONS
## (OCCURRENCE POLICY)
### DECLARATION

**NAMED INSURED AND ADDRESS:**

SWS LLC (DBA) Securewatch

505 S Gay St Ste 600
Knoxville, TN 37902

**POLICY NUMBER:** FMMI024868

**RENEWAL OF:** NEW

**POLICY PERIOD:** 03/15/2011 TO 03/15/2012

12:01 A.M. STANDARD TIME AT THE ADDRESS
OF THE NAMED INSURED AS STATED HEREIN.

**AUDIT PERIOD:** Annual Audit

**THE NAMED INSURED IS:** Limited Liability Company

**BUSINESS DESCRIPTION:** See Schedule Attached 'CVX-DEC-EX'

## LIMITS OF LIABILITY: COVERAGE IS PROVIDED ONLY IF A LIMIT IS SHOWN BELOW:

| | |
|---|---|
| General Aggregate Limit | $2,000,000 |
| Products-Completed Operations Aggregate Limit | $2,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Personal and Advertising Injury Limit | Amendment of Limits Endorsement |
| Fire Damage Limit | $50,000 |
| Medical Payments Limit | $5,000 |

## FORMS & ENDORSEMENTS ATTACHED TO THIS POLICY AT TIME OF ISSUE:

See Attached Extension of Declarations, Form # CVX-DEC-EX

**TOTAL ADVANCE PREMIUM**

$ 200,000.00

250.00 Processing Fee

**SUBJECT TO AUDIT PREMIUM ADJUSTMENT**

*"This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes."*

*IMPORTANT! Please carefully examine your policy as it may contain significant coverage modifications or exclusions. If this policy is a renewal, it may not contain the same precise terms and conditions as the prior policy*

NOTICE: IN ORDER TO PRESERVE YOUR RIGHTS UNDER THIS POLICY ALL CLAIMS MUST BE REPORTED IMMEDIATELY TO:

*Cover X Corporation*

*P.O. Box 5096*

*Southfield, MI 48086*

**Phone: 248-358-4010**

**Fax: 248-357-5036**

*THE INSURANCE COMPANY IN WHICH THIS COVERAGE IS PLACED IS AUTHORIZED TO TRANSACT BUSINESS IN THE STATE WHERE THE PROPERTY AND/OR ASSURED IS LOCATED BUT THE COMPANY IS NOT A LICENSED CARRIER IN THAT STATE. THIS POLICY AND THE PREMIUM THEREON MUST BE PROPERLY DECLARED AS A SURPLUS LINES RISK TO THE INSURANCE DEPARTMENT OF THE STATE. PROPER FILINGS MUST BE MADE AND SURPLUS LINES TAXES PAID BY A SURPLUS LINES BROKER IN THE STATES.*

# TRUE & COMPLETE COPY 02/21/2014

DATE: 3/22/11

CVX-DEC-0030(7/96)

Countersigned By Authorized Representative: _____

Policy No.: FMMI024868

**LOCATION OF PREMISES**

Location of All Premises You Own, Rent or Occupy:

1.   505 S GAY STREET SUITE 600, KNOXVILLE, TN 37902

| PREMIUM CLASSIFICATION | EXPOSURE AMOUNT PREMIUM BASIS | RATE | ADVANCE PREMIUM |
|---|---|---|---|
| 1. 91127-Alarm & Alarm Systems Installation Servicing & Sales Including Monitoring Operations | 100,000,000 Per $1,000 of Receipts | 2.0000 Subject to a minimum premium of $200,000.00 | $200,000.00 |
| 2. 99999-Additional Insured  BLANKET | Included | 0.0000 | |

EXTENSION OF DECLARATIONS TOTAL ADVANCE PREMIUM:      $200,000.00

CVX-DEC-EX

**FORMS & ENDORSEMENTS ATTACHED TO THIS POLICY AT TIME OF ISSUE:**

CG 00 01 (01/96) - COMMERCIAL GENERAL LIABILITY COVERAGE FORM
CG 00 57 (09/99)-AMENDMENT OF INSURING AGREEMENT-KNOWN INJURY OR DAMAGE
CG 00 62 (12/02) - WAR LIABILITY EXCLUSION
CG 20 10 (07/04) - ADDITIONAL INSURED-OWNERS,LESSEES OR CONTRACTORS
CG 20 37 (07/04) - ADDITIONAL INSURED-OWNERS, LESSEES OR CNTRCTRS-COMPL OPS
CG 21 49(01/96) - TOTAL POLLUTION EXCLUSION ENDORSEMENT
CG 21 54 (01/96) - EXCLUSION - DESIGNATED OPS COVERED BY CONSOLID. WRAP-UP
CG 24 04 (10/93) - WAIVER OF TRANS OF RIGHTS OF RECOVERY AGAINST OTHERS
CL 344(11/85) AMENDMENT-AGGREGATE LIMITS OF INSURANCE(PER PROJECT)
CVX-EO1 (07/01) - ERRORS & OMISSIONS
CVX-GL-0104 (10/05) - INDEPENDENT CONTRACTORS LIMITATION OF COVERAGE
CVX-GL-0242(6/91) EXCLUSION - EMPLOYEES, PERSONS & ORGANIZATIONS
CVX-GL-0312(10/90) EXCLUSION PUN OR EMPL DMGS CRIMINAL ACTS
CVX-GL-0406(11/96) CONTRACTUAL LIABILITY LIMITATION ENDORSEMENT
CVX-GL-0509(12/88) LOST KEY COVERAGE
CVX-GL-0700 (08/04) - EXCLUSION OF SPECIFIC WORK
CVX-GL-0701 (03/05) - CLASSIFICATION DESCRIPTION
CVX-GL-0800 (02/06) - AMENDMENT OF PREMIUM ENDORSEMENT
CVX-GL-1001A (09/02) - EXCLUSION - MOLD, FUNGI OR BACTERIA
CVX-GL-1002 (09/02) - TERRORISM EXCLUSION
CVX-GL-1012 (02/06) - CARE, CUSTODY, CONTROL AMENDATORY ENDORSEMENT
CVX-GL-3117 (03/09) - EXCLUSION - IMPORTED BUILDING MATERIALS
CVX-GL-5007(07/2000) - SUBSIDENCE EXCLUSION
CVX-GL-5011 (05/06) - CROSS SUITS ENDORSEMENT
CVX-GL-5018(07/2000) - LEAD EXCLUSION ENDORSEMENT
CVX-GL-5054 (08/04) - EXCLUSION - ASBESTOS, SILICA DUST, TOXIC SUBSTANCES
CVX-GL-5066 (05/04) - CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION
CVX-GL-5077 (02/08) - PRIMARY/NON-CONTRIBUTORY ENDORSEMENT
CVX-GL-5080 (10/08) - EXCLUSION - ELECTROMAGNETIC FIELD
CVX-GL-OC-0252(6/94) AMENDMENT OF LIMITS INSURANCE
FMIC - CLAIM NOTIFICATION (12/06)
FMIC GL 2015 (01/11) - POLICY DEDUCTIBLE ENDST
FMIC-LEGAL (7/96) SERVICE OF SUIT
GU 207(6/78) ENDORSEMENT
GU 207(6/78) ENDORSEMENT
GU 267(11/85) COMMON POLICY CONDITIONS
GU 276a(11/85) NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

CVX-DEC-EX

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the cause of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983

Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 37 of 106   PageID #: 42

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 38 of 106   PageID #: 43

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

## c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

## d. Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

## e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

## f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Copyright, Insurance Services Office, Inc., 1994 □

Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 39 of 106   PageID #: 44

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or danger-ous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replace-ment, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporar-ily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured be-comes legally obligated to pay as damages be-cause of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "per-sonal injury" or "advertising injury" to which this insurance does not apply. We may, at our dis-cretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insur-ance in the payment of judgments or set-tlements under Coverages A or B or medi-cal expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless ex-plicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding ad-vertising, publishing, broadcasting or tele-casting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

**(5)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**b.** "Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage A.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 43 of 106   PageID #: 48

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

    **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      **(1)** "Bodily injury" or "personal injury":

        **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

        **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

        **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

        **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by,

        **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

    **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

    **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay the sum of:

    **a.** Medical expenses under Coverage C;

    **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    **c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage A; and

    **b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1994
**CG 00 01 01 96** ☐

Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 45 of 106   PageID #: 50

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

### a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

### b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

   (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

Case 3:14-cv-00256-PLR-CCS　Document 1-1　Filed 06/12/14　Page 48 of 106　PageID #: 53

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, water-craft or "auto" to the place where it is finally de-livered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not at-tached to the aircraft, watercraft or "auto".

**11.** "Mobile equipment" means any of the following types of land vehicles, including any attached ma-chinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, main-tained primarily to provide mobility to perma-nently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently at-tached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building clean-ing, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the fol-lowing types of permanently attached equip-ment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building clean-ing, geophysical exploration, lighting and well servicing equipment.

**12.** "Occurrence" means an accident, including con-tinuous or repeated exposure to substantially the same general harmful conditions.

**13.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person oc-cupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slan-ders or libels a person or organization or dis-parages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that vio-lates a person's right of privacy.

**14.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property dam-age" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical pos-session; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the fol-lowing times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your con-tract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

   **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(1)** You;

      **(2)** Others trading under your name; or

      **(3)** A person or organization whose business or assets you have acquired; and

   **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

   **a.** Work or operations performed by you or on your behalf; and

   **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **b.** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 25 03 11 85

# AMENDMENT—AGGREGATE LIMITS OF INSURANCE
# (PER PROJECT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The General Aggregate Limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects away from premises owned by or rented to you.

Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 51 of 106   PageID #: 56

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION
## PUNITIVE OR EXEMPLARY DAMAGES
## CRIMINAL ACTS, DECEPTIVE OR FRAUDULENT TRADE PRACTICES

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding anything to the contrary contained in the policy to which this endorsement attaches, or any endorsement scheduled on the declarations of this policy, or any endorsement subsequently attached to this policy, it is agreed that this insurance does not apply to:

A. "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" arising out of any actual or alleged

"criminal act," or

deceptive or fraudulent trade practice, or

violation of the Racketeering Influenced and Corrupt Organization Act or any similar act, whether Federal, State or Municipal, or

unfair business practice, trade practice or similar activity:

1. by any insured; or

2. by any employee of any insured; or

3. by any person or entity for whom any insured is legally liable; or

4. arising out of, caused by, or related to the employment practices of any insured including, but not limited to, negligent hiring, negligent hiring practices, negligent training, or negligent supervision; or

5. arising out of and in the course of, or as a consequence of, employment by any insured; or

6. arising out of and in the course of, or as a consequence of, association with any insured.

This exclusion applies:

(a) whether any insured may or may not be liable as an employer or in any other capacity; and

(b) to any obligation to contribute to, share damages with, repay or indemnify someone else who must pay damages because of the "Bodily Injury," "Property Damage," "Personal Injury," or "Advertising Injury."

"Criminal Act" means any act committed in violation of a law prohibiting it, or omitted in violation of a law ordering it.

B. Any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages.

It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits related to the above described activities which claim, demand or suit advocates any theory of liability, whether sounding in, or alleging tort, or in contract. There shall further be no duty or obligation on the part of the Company to respond to, investigate, or defend anyone for any such claim, demand or suit.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by _____
                              (Authorized Representative)

CVX-GL-0312 (10/90)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTUAL LIABILITY LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The definition of "Insured Contract" in the Definitions Section is replaced by the following:

"Insured Contract" means:

1. Any valid, written and fully executed:

   a. Lease of premises;

   b. Easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad;

   c. Indemnification of a municipality as required by ordinance, except in connection with work for the municipality,

   d. Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade, or

   e. Elevator maintenance agreement.

2. That part of any other valid, written and fully executed contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage." Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract agreement:

(1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

   b. Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(2) Under which the Insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the Insured's rendering or failing to render professional services, including those listed in (1) above and supervisory, inspection or engineering services, or

(3) That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

(4) That indemnifies the indemnitee for liability resulting from his sole negligence.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective          Policy No.          Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-0406(11/96)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Section III - Limits of Insurance is replaced by the following:

### SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C; and

   b. Damages because of injury and damage included in the "products-completed operations hazard."

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of injury and damage included in the "products-completed operations hazard."

4. Subject to 2. above and regardless of the number of:

   a. Insureds;

   b. Persons or organizations who sustain injury or damage; or

   c. Claims made or "suits" brought on account of "personal injury" or advertising injury,

   the most we will pay under Coverage B shall not exceed the Each Occurrence Limit shown in the Declarations.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises rented to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expense because of "bodily injury" sustained by any one person.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                          Policy No.                          Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative)

## SERVICE OF SUIT

The Company agrees that in the event of its failure to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

The Company hereby designates the Commissioner, Director or Superintendent of Insurance, or other officer specified by law for that purpose, or his successor or successors in office, or the person designated below, in the space indicated, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured arising out of this contract of insurance. It is further agreed that the Company shall abide by the final decision of any court having jurisdiction in which such action is filed, or by the decision of any appellate court in the event of an appeal.

Upon receipt of process served hereunder, the Company hereby designates Marcia M. Paulsen, Vice President; 26600 Telegraph Rd.; Southfield, Michigan 48033 as the person to whom the officer designated above is authorized to mail such process.

In the alternative, process may be served upon the authorized agent of the Company whose name and address are:

COVERX
26600 TELEGRAPH RD.
SOUTHFIELD, MICHIGAN 48033

FMIC-LEGAL (7/96)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (BROAD FORM)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" include radioactive, toxic or explosive properties;

    "Nuclear material" means "source material," "Special nuclear material" or "by-product material";

GU 276a (11-85)
IL 00 21 11 85
Copyright, Insurance Services Office, Inc., 1983, 1984
Page 1 of 2

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel" or (3) handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1983, 1984

GU 276a (11-85)
IL 00 21 11 85

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is understood and agreed that we do not insure any insured for any loss, whether *"property damage," "bodily injury," "personal injury"* or *"advertising injury,"* however caused, that results in any of the following. Such loss is excluded regardless of any other cause or event contributing or in any sequence to the loss:

1. The depletion or exhaustion of underground resources;

2. Subsidence;

3. Flood or mud flow;

4. Earthquake, volcanic eruption or other tectonic processes; or

5. Settling, sinking, slipping, falling away, caving in, shifting, eroding, tilting or any movement of land or earth.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                 Policy No.                 Endorsement No.

Named Insured

Countersigned by _____
                                   (Authorized Representative)

CVX-GL-5007(07/2000)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LEAD EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed that the following exclusions are added to SECTION I, paragraph 2. Exclusions of the Policy:

(s) *"Bodily injury"* or *"property damage"* arising out of manufacturing, mining, use, sale, application, installation, distribution, storage, disposal or removal of, or any exposure to lead, lead based products, lead containing materials or lead containing waste, or to any obligation of the Insured to share damages with or repay another for damages arising out of such *"bodily injury"* or *"property damage."*

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-5018(07/2000)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages) is replaced by the following:

This insurance does not apply to:

**f.** Pollution

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 60 of 106   PageID #: 65

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **1. Insuring Agreement** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## EXCLUSION – EMPLOYEES, PERSONS & ORGANIZATIONS

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding anything to the contrary contained in:

1. the policy to which this endorsement attaches or

2. any endorsement scheduled on the declarations of this policy or

3. any endorsement subsequently attached to this policy,

It is agreed that this insurance does not apply to "Bodily Injury," "Property Damage" or "Personal Injury" to:

(1) An "employee" of any Insured or to any "person" or "organization"

    (a) resulting from discrimination based on, but not limited to, race, color, creed, sex, religion, age, national origin, handicap, political or sexual preference, whether or not for alleged violation of any federal, state or local governmental law or regulation prohibiting such discrimination;

    (b) arising out of, caused by, or related to the employment practices of any insured including, but not limited to, hiring, negligent hiring or hiring practices, negligent training, or negligent supervision, termination, layoff, disciplinary procedures, promotion and failure to promote;

    (c) resulting from sexual harassment by any insured or by any other "employee" of any insured;

    (d) arising out of or in the course of, or as a consequence of, employment by any insured;

    (e) arising out of or in the course of, or as a consequence of, association with any insured.

(1) The spouse, parent, child, brother, sister, dependent or any other relative of that "employee," or any successor or assignee thereof as a consequence of (1) above.

This exclusion applies:

(1) Whether any insured may or may not be liable as an employer or in any other capacity; and

(2) To any obligation to contribute to, share damages with, repay or indemnify someone else who must pay damages because of the "Bodily Injury," "Property Damage" or "Personal Injury";

(3) To all "claims" and "suits" by any "employee" of any insured, any "person" or "organization" defined herein, or any person or entity for damages because of "Bodily Injury," "Property Damage" or "Personal Injury," including but not limited to damages for care and loss of services, whether occurring before or during their employment or association with any insured or occurring after such employment or association has terminated;

(4) To any "claim" for damages including, but not limited to, medical expenses, lost wages or fringe benefits;

(5) To any "claim" for injunctive or non-monetary relief including, but not limited to, expenses for corrective action incurred at the direction of a court, federal, state or local governmental agency.

It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits as above described. There shall further be no duty or obligation on the part of the Company under this insurance to respond to, investigate, or defend anyone, including but not limited to any insured, his or its agents, servants or "employees," or any third parties for any such claim, demand or suit.

The term "person" or "organization" means any individual, partnership, joint venture, or organization, including its past, present or future partners, officers, directors or stockholders who are included in the definition of "insured" or "additional insured" in the policy to which this endorsement attaches.

The term "employee" means a person who works directly or indirectly for any Insured whether or not such person is paid directly by any Insured or paid by any other person or entity and whether or not such arrangement is on a temporary, short, intermediate or long term basis.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective          Policy No.                    Endorsement No.
Named Insured
                 Countersigned by: _____
                                   (Authorized Representative)

*CVX-GL-0242 (6/91)*

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ERRORS AND OMISSIONS

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Subject to all of the terms, limitations, exclusions and conditions of the policy and all the endorsements attached thereto, we will pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages resulting from the negligent acts, errors or omissions of the named Insured and arising out of the operations of the named Insured to which this insurance applies.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                          Policy No.                     Endorsement No.

Named Insured

Countersigned by: _____

(Authorized Representative)

CVX-EO1 (07/2001)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# EXCLUSION – MOLD, FUNGI OR BACTERIA

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**MEDICAL OR X-RAY LABORATORIES PROFESSIONAL LIABILITY COVERAGE PART**
**PUBLIC OFFICIALS LIABILITY COVERAGE PART**
**LAW ENFORCEMENT LIABILITY COVERAGE PART**

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, this insurance does not apply to and shall not respond to any claim, demand or "suit" alleging:

1. "Bodily Injury," "Property Damage" or "Personal and Advertising Injury" arising out of, in whole or in part, the actual, alleged or threatened discharge, inhalation, ingestion, dispersal, seepage, migration, release, escape or existence of any mold, mildew, bacteria or fungus, or any materials containing them, at any time.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any mold, mildew, bacteria or fungus, or any materials containing them; or

   b. Claim, demand or "suit" by or on behalf of a governmental authority or any other person or organization for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any mold, mildew, bacteria or fungus, or any materials containing them.

This exclusion applies to:

1. Our obligation to contribute to, share damages with, repay or indemnify someone else who must pay damages because of the "Bodily Injury," "Property Damage" or "Personal and Advertising Injury" or pay any loss, cost or expense noted in paragraphs 2a. and 2b., above.

It is the intent of this endorsement to exclude from this insurance any claim, demand or "suit" as described above. Therefore, there shall be no duty or obligation on the part of the Company under this insurance to respond to, investigate or defend anyone, including but not limited to any insured, its agents, servants or "employees" or any third parties for any such claim, demand or "suit."

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by _____
                                            (Authorized Representative)

CVX-GL-1001A(09/2002)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# TERRORISM EXCLUSION

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, this insurance does not apply to:

"Bodily Injury," "Property Damage," "Advertising-Personal Injury," or "Errors or Omissions" caused directly by, or as a consequence of, "terrorism," including any action not otherwise excluded under the War and Military Action exclusion that is taken by a government or sovereign power (de jure or de facto) in controlling, preventing, suppressing, retaliating against or in any way responding to "terrorism." Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss, even if the act of "terrorism" that causes or results in the loss or damage itself is itself a cause of loss that is otherwise insured against under this policy.

If, by reason of this exclusion, we allege that any loss or damage under this policy is not covered, the burden of proving that such loss or damage is covered shall be upon you.

The following definition is added:

"Terrorism" means any act, whether actual or threatened, and whether committed by one or more persons acting alone or in connection with any group or organization, that:

1. Is not otherwise excluded under the War and Military Action exclusion; and

2. Is intended or appears to be intended:

    a. To intimidate a government, a civilian population or any segment of the government or civilian population; or

    b. To influence, coerce or protest against the actions, behavior or policies of any government or sovereign power (de jure or de facto) or any segment of the government or sovereign; or

    c. To further any political, ideological, economic, religious or social aim, objective or cause; or

    d. To disrupt any segment of the global economy or the economy of any country or political state;

    and

1. Is acknowledged by the United States government or the government of the country or political state where the act occurs to be an act of "terrorism" or, if not so acknowledged, can reasonably be construed by us to be an act of "terrorism."

It is the intent of this endorsement to exclude from this insurance all claims, demands or "suits" arising from the insurable coverage excluded under this endorsement. There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate or indemnify anyone, including but not limited to you, your agents, servants or employees, or any third parties for any such claim, demand or suit.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                  Policy No.              Endorsement No.

Named Insured

Countersigned by _____
                                      (Authorized Representative)

CVX-GL-1002(09/2002)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description and Location of Operation(s):**

**Any and all Consolidated Insurance Program (Wrap-Up) locations**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 66 of 106   PageID #: 71

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any damages because of or related to bodily injury or property damage:

1. which first existed, or alleged to have first existed, prior to the inception date of this policy, or

2. which are, or are alleged to be, in the process of taking place prior to the inception date of this policy, even if the actual or alleged bodily injury or property damage continues during this policy period.

3. which were caused, or are alleged to have been caused, by the same condition or construction defect which resulted in bodily injury or property damage which first existed prior to the inception date of this policy.

We shall have no duty to defend any insured against any loss, claim, suit or other proceeding alleging damages arising out of or related to bodily injury or property damage to which this endorsement applies.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                 Policy No.                    Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-5066(05/2004)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

 © ISO Properties, Inc., 2002

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ASBESTOS, SILICA DUST, TOXIC SUBSTANCES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following exclusion is added to Coverages A and B (Section I):

This insurance does not apply to:

1. "Bodily injury" or "personal injury" caused by asbestosis, silicosis, mesothelioma, emphysema, pneumoconiosis, pulmonary fibrosis, endothelioma or any lung disease or any ailment caused by, or aggravated by exposure, inhalation, consumption or absorption of asbestos fibers or dust or silica dust;

2. Any "property damage" due to or arising out of the actual or alleged presence of asbestos or silica dust in any form, including the costs of remedial investigations or feasibility studies, or to the costs of testing, monitoring, cleaning or removal of any property or substance; or

3. "Bodily injury," "property damage," "advertising injury," "personal injury" or any other action based upon the insured(s) supervision, removal, instructions, recommendations, warranties (expressed or implied), warnings or advice given, or withheld, regarding asbestos fibers or dust or silica dust.

It is the intent of this endorsement to exclude from this insurance all claims, demands or "suits" arising from the insurable coverage excluded under this endorsement. There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate or indemnify anyone, including but not limited to you, your agents, servants or employees, or any third parties for any such claim, demand or suit.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective     Policy No.     Endorsement No.

Named Insured

Countersigned by _____
         (Authorized Representative)

CVX-GL-5054(08/2004)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CROSS SUITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is hereby understood and agreed that the coverage afforded by this Policy does not apply to a claim for damages initiated, alleged or caused to be brought about by a Named Insured or Additional Named Insured covered by this Policy against any other Named Insured or Additional Named Insured.

It is the intent of this endorsement to exclude from this insurance all claims, demands or "suits" as above described. There shall, therefore, be no duty or obligation on our part under this insurance to defend, respond to, investigate or indemnify anyone, including but not limited to you, your agents, servants or employees, or any third parties for any such claim, demand or "suit."

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                     Policy No.                          Endorsement No.

Named Insured

Countersigned by _____
                                          (Authorized Representative)

CVX-GL-5011(05/2006)

# CLAIM NOTIFICATION

Send all claim notifications and information to:

## First Mercury Insurance Company

P.O. Box 5096
Southfield, Michigan 48086

Or

26600 Telegraph Rd.
Southfield, MI 48033

Or Fax to:

## First Mercury Insurance Company

Attn: Claim Department
Fax Number: (248) 357-5036

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

FMIC – Claim Notification (12/2006)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION — IMPORTED BUILDING MATERIALS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of, caused by, related or attributable to, in whole or in part, drywall, plasterboard, sheetrock, gypsum board, or any materials used in the manufacture of drywall, plasterboard, sheetrock, gypsum board or any other materials used in the construction of interior walls, that were manufactured in, originated or exported from China or incorporated any component parts or materials made in, originated or exported from China.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Countersigned by _____
                                        (Authorized Representative)

CVX-GL-3117(03/2009)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ELECTROMAGNETIC FIELD

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

> This policy does not apply to "bodily injury," "property damage" or "personal and advertising injury," arising from claims or "suits" resulting directly or indirectly from any actual or alleged exposure to or alleged presence of, any electromagnetic field.

The following is added to **SECTION V – DEFINITIONS**:

> "Electromagnetic field" means any electrical field, magnetic field, radar, microwave, radio wave, and any other electromagnetic radiation or electromagnetic energy of any kind.

This exclusion does not apply to "bodily injury" abruptly and immediately caused by direct contact with an electric current (such as electrocution) or to "property damage" directly, immediately and abruptly caused by an electric current (such as an electrical fire caused by lightening or any short circuit).

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective                     Policy No.                          Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative)

CVX-GL-5080(10/2008)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOST KEY COVERAGE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, it is agreed that we will pay on behalf of the insured, subject to the limit of liability and deductible stated herein, those sums which the insured shall become legally obligated to pay as damages because of the loss or mysterious disappearance of any keys which are entrusted to or in the possession, care, custody or control of the insured or his employees, subject however to the following provisions:

(1) Such insurance as is afforded by this endorsement shall not apply to damages caused by misappropriation, secretion, conversion, infidelity or any act of dishonesty on the part of any Insured, his employees or agents;

(2) The Company's liability for all damages because of loss to which this endorsement applies shall be limited to the actual cost of keys, adjustment of locks to accept new keys or, if required, new locks including cost of their installation and, subject to such limitation, the total liability of the Company for all damages as the result of any one occurrence shall not exceed the limit of liability stated in the schedule below;

(3) The Company's obligation to pay damages on behalf of the Insured applies only to the amount of damages in excess of the deductible amount set forth in the schedule below. The stated deductible amount shall apply to all damages sustained as the result of one occurrence.

### SCHEDULE

| Total Limit of Liability | Deductible Amount |
|---|---|
| $100,000.00 | $1,000.00 |

ALL OTHER TERMS, CONDITIONS, DEFINITIONS, EXCLUSIONS, LIMITS OF LIABILITY, DEDUCTIBLE TERMS, ETC. REMAIN UNCHANGED.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                    Policy No. FMMI024868                    Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-0509(12/88)

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

# ENDORSEMENT #1

This endorsement, effective on     03/15/2011     at 12:01 A.M. standard time, forms a part of
                                  (DATE)

Policy No. FMMI024868          of the          FIRST MERCURY INSURANCE COMPANY
                                                (NAME OF INSURANCE COMPANY)

Issued to   SWS LLC (DBA) Securewatch

By CoverX Corporation

_____
                   Authorized Representative

IT IS HEREBY UNDERSTOOD AND AGREED THAT FORM CVX-GL-0700-EXCLUSION OF SPECIFIC WORK IS AMENDED TO INCLUDE THE FOLLOWING EXCLUSIONS: "ANY AND ALL OPERATIONS INVOLVING PHYSICAL, PRIVATE SECURITY RESPONSE OR PRIVATE DISPATCH TO A SUBSCRIBER'S PREMISES SUBSEQUENT TO AND RESULTING FROM THE RECEIPT OF AN ALARM SIGNAL AT THE MONITORING SERVICE"

GU 207 (Ed. 6-78)                            Page 1 of 1
Processed Date: 03/22/11 03:09:25 PM          Print Date: 03/22/11 05:01:17 PM
Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 75 of 106   PageID #: 80

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

# ENDORSEMENT #2

This endorsement, effective on    03/15/2011        at 12:01 A.M. standard time, forms a part of
                                         (DATE)

Policy No. FMMI024868          of the          FIRST MERCURY INSURANCE COMPANY
                                              (NAME OF INSURANCE COMPANY)

Issued to  SWS LLC (DBA) Securewatch

By CoverX Corporation

_____
                                     Authorized Representative

"It is hereby agreed that form CL 344 (11/85) Amendment - Aggregate of Limits of Insurance (per project) is capped at 5MM"

GU 207 (Ed. 6-78)                                        Page 1 of 1
Processed Date:  03/22/11 03:09:25 PM          Print Date:  03/22/11 05:01:17 PM
Case 3:14-cv-00256-PLR-CCS   Document 1-1   Filed 06/12/14   Page 76 of 106   PageID #: 81

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**
Any Person or Organization as Required By Written Contract

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Any Person or Organization as Required By Written Contract | ANY |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF SPECIFIC WORK

This endorsement modifies Insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding anything to the contrary contained in the policy or any endorsement attached thereto, it is agreed that this insurance does not apply to "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" arising out of the rendering of or failure to render any services described in the Schedule of Excluded Operations contained in this endorsement, regardless of whether such operations are conducted by you or on your behalf. This endorsement applies even if other causes contribute to or aggravate the "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury."

Description of Excluded Operations:

It is the intent of this endorsement to exclude from this insurance all claims, demands or suits arising out of the rendering of or failure to render any services scheduled above in the Description of Excluded Operations. There shall, therefore, be no duty or obligation on our part under this Insurance to defend, respond to, investigate, or indemnify anyone, including but not limited to you, your agents, servants, or employees, or any third parties for any such claim, demand or suit.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective          Policy No. FMMI024868          Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-0700(08/2004)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CLASSIFICATION DESCRIPTION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

<u>"Your Work" (Description)</u>
91127-Alarm & Alarm Systems Installation Servicing & Sales  Including Monitoring Operations

This insurance applies only to "advertising injury," "bodily injury," "personal injury," and "property damage" arising out of the specific work described above, and no other.  All of your other operations are specifically excluded from coverage under the policy to which this endorsement is attached.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                  Policy No. FMMI024868        Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative)

CVX-GL-0701(03/2005)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| Any Person or Organization as Required By Written Contract | ANY |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by 'your work' at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

**CG 20 37 07 04**        © ISO Properties, Inc., 2004        **Page 1 of 1**

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

# INDEPENDENT CONTRACTORS
# LIMITATION OF COVERAGE

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any claim, demand or suit arising out of operations performed for you by independent contractors unless such independent contractors have in force at the time of such occurrence commercial general liability insurance, listing you as an additional insured on said commercial general liability policy, and the limits of liability for such insurance are equal to or greater than those shown in the schedule below.

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other than Products-Completed Operations) | $ 2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 |
| PERSONAL INJURY LIMIT AND ADVERTISING INJURY LIMIT | $ 1,000,000 |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective          Policy No. FMMI024868          Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative)

CVX-GL-0104(10/2005)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CARE, CUSTODY, CONTROL AMENDATORY ENDORSEMENT

### (Limited Form)

This endorsement modifies Insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusions j.(4), (5) and (6) under Coverage A (Section I) are deleted subject to the following limits of liability:

| | |
|---|---|
| Each Occurrence Limit: | $ 1,000,000 |
| Aggregate Limit: | $ 1,000,000 |
| Deductible: | $ 1,000 |

The above stated limits are inclusive of and are not in addition to the limits of liability specified in the Declarations.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective        Policy No. FMMI024868        Endorsement No.

Named Insured

Countersigned by _____

(Authorized Representative)

CVX-GL-1012(02/2006)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 5. of Section IV - Conditions is replaced by the following:

"5." Premium Audit.

    a. We will compute all premiums for this Policy in accordance with our rules and rates.

    b. Premium shown in this Policy is the advance premium for the policy term. If final audit develops a premium less than the advance premium, a minimum premium of $ _200,000.00_ will be retained by us. If final audit develops a premium greater than the advance premium, additional premium shall be due and payable to us on notice to the first Named Insured.

    c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such time as we may request.

    d. In the event you cancel this Policy, a minimum premium of $ _50,000.00_ or the applicable pro-rata/short rate earned premium, whichever is greater, will be retained by us.

Your failure to pay premium when due shall be considered a request by the first Named Insured or their appointed authority for us to cancel.

We have the right, but are not obligated, to rescind our cancellation notice if the premium is received prior to the effective date of cancellation.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of Policy.)

Endorsement effective             Policy No. FMMI024868      Endorsement No.

Named Insured

Countersigned by _____

                                   (Authorized Representative)

CVX-GL-0800(02/2006)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PRIMARY / NON-CONTRIBUTORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

**Schedule**

**Name and Address of Person or Organization:**
Any Person or Organization as Required By Written Contract

It is understood and agreed that coverage for the person or organization shown in the above schedule is primary and non-contributory as respects liability created by the errors, acts or omissions of the named insured herein and subject to the terms and conditions in the Additional Insured Endorsement attached hereto.

All other terms, conditions, limitations and exclusions of this policy are unchanged and applicable.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

Endorsement effective            Policy No.FMMI024868            Endorsement No.

Named Insured

Countersigned by _____
(Authorized Representative)

CVX-GL-5077(02/2008)

# POLICY DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

## SCHEDULE

| | AMOUNT AND BASIS OF DEDUCTIBLE | |
|---|---|---|
| COVERAGE A | PER CLAIM | PER OCCURRENCE |
| BODILY INJURY LIABILITY | $1,000 | $ |
| OR | | |
| PROPERTY DAMAGE LIABILITY | $1,000 | $ |
| OR | | |
| BODILY INJURY LIABILITY AND/OR PROPERTY DAMAGE LIABILITY COMBINED | $ | $ |

| COVERAGE B | PER INJURY |
|---|---|
| PERSONAL AND ADVERTISING INJURY LIABILITY | $1,000 |

**A.** Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal Injury Liability, and Advertising Injury Liability Coverages to pay damages and Supplementary Payments on your behalf applies only to the amount of damages and Supplementary Payments in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** Your policy may have a deductible amount on either a per claim , a per "occurrence" or a per injury basis. Your deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amo     unt stated in the Schedule above applies as follows:

    **1.** **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

        **a.** Under Bodily Injury Liability Coverage, to all damages sustained b y any one person because of "bodily injury";

        **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

        **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

            **(1)** "Bodily injury";

            **(2)** "Property damage"; or

            **(3)** "Bodily injury" and "property damage" combined; or

        **d.** Under Supplementary Payments -Coverages A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

    as the result of any one "occurrence."

    If damages are claimed for care, loss of services or death resulting at any time from "bodily injury, " a separate deductible amount will be applied to each person making a claim for such damages.

    With respect to "property damage," person includes an organization.

FMIC-GL-2015 (01/2011)

**Page 1 of 2**

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a per "occurrence" basis, that deductible amount applies as follows:

   **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   **b.** Under Property Damage Liability Coverage, to all damages because of "property damage";

   **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      **(1)** "Bodily injury";

      **(2)** "Property damage"; or

      **(3)** "Bodily injury" and "property damage" combined; or

   **d.** Under Supplementary Payments - Coverages **A** and **B**, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

as the result of any one "occurrence," regardless of the number of persons or organizations who sustain damages because of that "occurrence."

**3. PER INJURY BASIS.** If the deductible amount indicated in the Schedule above is on a per injury basis, the deductible amount applies as follows:

   **a.** Under the Personal Injury Liability Coverage to all damages because of "personal injury" sustained by any one person or organization as a result of any one injury.

   **b.** Under the Advertising Injury Liability Coverage to all damages because of "advertising injury" sustained by any one person or organization as a result of any one injury.

   **c.** Under Supplementary Payments - Coverages **A** and **B**, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies.

**C.** The terms of this insurance, including those with respect to:

   **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

   **2.** Your duties in the event of an "occurrence," claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We, at our sole election and option, may either:

   **1.** Pay any part of or all of the deductible amount to effect settlement of any claim or "suit" or payment of Supplementary Payments. Upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

   **2.** Simultaneously upon receipt of notice of any claim or "suit," or at any time thereafter, request you pay or deposit with us all or any part of the deductible amount, to be held and applied by us as herein provided.

**F.** The deductible may not be satisfied by payments made by any additional insured, any other insurance, or any other insurer, unless such payments are made under a policy written specifically to cover the deductible obligations under this policy.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The following information is required only when this endorsement is issued subsequent to preparation of the policy.)

Endorsement effective             Policy No.               Endorsement No.

Named Insured

Countersigned by _____



26600 Telegraph Rd.
Southfield, MI 48033

P. O. Box 5069
Southfield, MI 48086

03/22/2011

**Re:** SWS LLC (DBA) Securewatch
FMMI024868

# THANK YOU FOR THE ORDER

# PLEASE REVIEW THIS POLICY CAREFULLY.

# THE COVERAGES AND TERMS OF THE POLICY MAY DIFFER FROM THOSE REQUESTED IN YOUR APPLICATION AND/OR YOUR EXPIRING POLICY.

# PLEASE REVIEW AND ADVISE US IMMEDIATELY IN WRITING OR VIA FAX IF YOU HAVE ANY CHANGES TO THIS POLICY.

**Telephone: 1 (800) 762-6837 - Fax: 1 (248) 358-2459**

# ENDORSEMENT #3

This endorsement, effective on      03/15/2011      at 12:01 A.M. standard time, forms a part of
                                              (DATE)

Policy No. FMMI024868           of the          FIRST MERCURY INSURANCE COMPANY
                                                            (NAME OF INSURANCE COMPANY)

Issued to    SWS LLC (DBA) Securewatch

By CoverX Corporation

                                               Authorized Representative

It is agreed that:

1) The Minimum Premium for Classification Code #91127 is amended to read $180,000 in lieu of $200,000.

2) 5.b. on Form #CVX-GL-0800 (02/06) - AMENDMENT OF PREMIUM ENDORSEMENT is amended to read $180,000 in lieu of $200,000.

All other terms and conditions remain unchanged.

**MAILED 04/19/2012 15:01 CREED**

Case 3:14-cv-00256-PLR-CCS    Document 1-1    Filed 06/12/14    Page 89 of 106    PageID #: 94

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

## AUDIT ENDORSEMENT

**Policy No.:** FMMI024868   **of the** FIRST MERCURY INSURANCE COMPANY
**Issued to:** SWS LLC (DBA) Securewatch
**By:** CoverX Corporation                **Authorized Representative:** _____
**Endorsement Effective Date:** 03/15/2011

In accordance with the Audit Provisions as stated in this policy, it is hereby understood and agreed that the Premium Basis for
Classifications with exposures as shown below is reported for the period of:        03/15/2011 to 03/15/2012

| CLASSIFICATION CODES | PREMIUM BASIS | AUDITED EXPOSURE RATE PREMIUM | CLASS WRITTEN PREMIUM | AUDIT PREMIUM DUE |
|---|---|---|---|---|
| 1.  81127-Alarm & Alarm Systems Installation Servicing & Sales  Including Monitoring Operations | Per $1,000 of Receipts | 63,863,781.00 2.00000 | | |
| | | Subject to a class minimum of $180,000.00   - | $200,000.00  = | ($20,000.00) |

|  |  |
|---|---|
| TOTAL AUDITED POLICY PREMIUM: | $180,000.00 |
| LESS TOTAL POLICY PREMIUM BILLED: | $200,000.00 |
| TOTAL AUDIT PREMIUM DUE: | ($20,000.00) |

**MAILED 08/06/2012 07:34 GROSHCHIN**

GU 207 (Ed. 6-78)



## **FIRST MERCURY**

A member of the Crum & Forster Enterprise

26600 Telegraph Road
Southfield, MI 48033
(800) 762-6837
(248)358-4010
(248) 358-2459 fax

March 14, 2014

VIA email srogers@securewatch.net AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED 7013 2250 0002 3680 7510

Scott Rogers
SWS LLC dba Securewatch
505 S Gay Street, Suite 600
Knoxville, TN 37902

RE:   *Hearn v. ADT & SWS LLC dba Secure Automation LLC fka Securewatch*, Case No. 13-CA-015113, in the Circuit Court in and for Hillsborough County, Florida
**RESERVATION OF RIGHTS**
Claimant:     Nicole Hearn
Insured:       SWS LLC dba Securewatch
D/L:             12/30/11
Our File No.:  30200
Policy No.:    FMMI024868
Effective Dates: 3/15/11 to 3/15/12

Dear Mr. Rogers:

I am handling the above-captioned matter on behalf of First Mercury Insurance Company ("First Mercury"). This letter acknowledges receipt of a copy of the complaint filed in the above-referenced lawsuit, which First Mercury received from Alan Bell with A&B Insurance on January 27, 2014. The lawsuit was filed in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida and is captioned *Nicole Hearn v ADT LLC dba ADT Security Services and SWS LLC dba Secure Automation, LLC fka Securewatch*, Case Number 13-CA-15113 (sometimes referred to hereafter as the "Lawsuit").

The purpose of this letter is to advise you of First Mercury's coverage position as it relates to the claims made against SWS LLC dba Securewatch ("you" or "SWS") by the Plaintiff, Nicole Hearn, in the Lawsuit. We have reviewed the policy referenced above, as well as the claims that Plaintiff has asserted in her Complaint. No other policies were considered.

Based on the policy provisions outlined below, First Mercury will assist you in the defense of the Lawsuit subject to a full reservation of First Mercury's rights. We have assigned the law firm of Quintairos, Prieto, Wood & Boyer and specifically, its attorney David Nilsen to assist in your defense. Please advise whether you agree to representation by Quintairos, Prieto, Wood & Boyer by completing the enclosed Retention of Independent Counsel Form and returning it to us within ten (10) days.



**EXHIBIT**

D

Below is a summary of the allegations made in the Complaint filed by Plaintiff in the Lawsuit. By describing the allegations, we are not commenting upon their accuracy or legitimacy. We are simply reciting the allegations for the purposes of discussing the various coverage issues. If you are aware of any additional information that you believe should influence the insurance coverage issues discussed in this letter, or if you believe that we have not accurately characterized these allegations, please forward that information to us and we will consider the possible effect it may have on coverage.

The Complaint alleges that SWS was an authorized dealer or distributor of ADT products and services, which it marketed using ADT-approved sales techniques. Paragraph 8. SWS recruited, hired, trained, and employed personnel to sell ADT products, and "[f]or all practical purposes," SWS salespeople acted as authorized representatives, employees, and agents of ADT. Paragraphs 9–10.

The Complaint further alleges that in late 2011, Rashad Hales applied for employment as a sales representative with SWS. Paragraph 15. Hales was hired "as an ADT sale representative" thereafter. Paragraph 16. On December 30, 2011, Hales was transported by SWS and/or ADT to Plaintiff's neighborhood for the purpose of making residential sales calls. Paragraphs 17–18. Hales approached Plaintiff's residence and knocked on her door, identifying himself as an SWS and/or ADT employee. Paragraph 19. Plaintiff declined to purchase ADT products or services and closed the door. Paragraph 19. Hales reappeared at Plaintiff's door "within minutes" armed with a knife, forced his way into Plaintiff's home, and battered, sexually assaulted, and threatened to kill her. Paragraph 19. Hales left Plaintiff's residence later that afternoon and rejoined with his SWS/ADT supervisor, who Hales told about his assault on Plaintiff. Paragraph 20. The supervisor called the police, who arrested Hales. Paragraph 20. Hales was charged and convicted of felony sexual battery and is presently incarcerated. Paragraph 21.

The Complaint alleges four claims against SWS: that SWS was negligent with regard to its hiring of Hales (Paragraphs 48–55); that SWS was negligent in its training and supervision of Hales (Paragraphs 56–60);and that SWS is liable for the acts of its employee, Hales, under the theories of *respondeat superior* and vicarious liability (Paragraphs 61–77). The Complaint further alleges that as a result of Hales's attack, Plaintiff suffered physical injuries, psychological injuries, physical restraint of her liberty, loss of present and future earnings, and loss of earning capacity, and she seeks to recover both economic and noneconomic damages. Paragraphs 46, 55, 66, 76.

### THE FIRST MERCURY INSURANCE POLICY & BASIS FOR FIRST MERCURY'S RESERVATION OF RIGHTS

First Mercury issued a commercial general liability insurance policy, policy number FMMI024868, to the Named Insured SWS LLC dba Securewatch ("SWS"), effective during the period from March 15, 2011 to March 15, 2012. The Policy provides commercial general liability insurance coverage to the Named Insured, SWS, with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate, and a $1,000 per claim deductible.

We wish to direct your attention to the Policy's Coverage A insuring agreement, which is amended by Endorsement CG 00 57 09 99 to read as follows:

### AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

2

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph 1. **Insuring Agreement of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" ... only if:

      (1) The "bodily injury" ... is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" ... occurs during the policy period;

                                        * * * * *

Certain terms used within Coverage A are defined in **SECTION V – DEFINITIONS**, including the following:

   3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

                                        * * *

   12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

                                        * * * * *

(Form CG 00 01 01 96, pp. 10, 12).  First Mercury reserves its right to deny coverage under Coverage A to the extent that Plaintiff's "bodily injury" was not caused by an "occurrence" as those terms are defined in the Policy.

We also wish to direct your attention to the Coverage B, Personal and Advertising Injury Liability, insuring agreement, which provides, in pertinent part:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

3

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    This insurance applies to:

    (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done for you or by you;

    * * *

(Form CG 00 01 01 96, p. 4). As used in Coverage B, "Personal injury" is defined as follows:

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e. Oral or written publication of material that violates a person's right of privacy.

(Form CG 00 01 01 96, p. 12).

First Mercury reserves its right to deny coverage under Coverage B to the extent Plaintiff did not suffer any "Personal injury" as that term is defined in the Policy. First Mercury also reserves its right to deny coverage under Coverage B to the extent that any "Personal injury" suffered by Plaintiff arose out of (1) something other than one of the enumerated offenses in **Section V.13**; or (2) an offense that did not arise out of your business.

4

The coverage provided under Coverage A and Coverage B is subject to certain terms, conditions, definitions, and exclusions found in the Policy and its Endorsements. Endorsement CVX-GL-0313 (10/90) states as follows:

**EXCLUSION**
**PUNITIVE OR EXEMPLARY DAMAGES**
**CRIMINAL ACTS, DECEPTIVE OR FRAUDULENT TRADE PRACTICES**

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Notwithstanding anything to the contrary contained in the policy to which this endorsement attaches, or any endorsement scheduled on the declarations of this policy, or any endorsement subsequently attached to this policy, it is agreed that this insurance does not apply to:

A.  "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" arising out of any actual or alleged

   "criminal act", **or**

   deceptive or fraudulent trade practice, **or**

   violation of the Racketeering Influenced and Corrupt Organization Act or any similar act, whether Federal, State or Municipal, **or**

   unfair business practice, trade practice or similar activity:

1.  by any insured; **or**

2.  by any employee of any insured; **or**

3.  by any person or entity for whom any insured is legally liable; **or**

4.  arising out of, caused by, or related to the employment practices of any insured including but not limited to, negligent hiring, negligent hiring practices, negligent training, or negligent supervision; **or**

5.  arising out of and in the course of, or as a consequence of, employment by any insured; **or**

6.  arising out of and in the course of, or as a consequence of, association with any insured.

This exclusion applies:

(a)  whether any insured may or may not be liable as an employer or in any other capacity; and

5

(b) to any obligation to contribute to, share damages with, repay or indemnify someone else who must pay damages because of the "Bodily Injury," "Property Damage," "Personal Injury," or "Advertising injury."

"Criminal Act" means any act committed in violation of a law prohibiting it, or omitted in violation of a law ordering it.

B. Any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages.

It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits related to the above described activities which claim, demand or suit advocates any theory of liability, whether sounding in, or alleging tort, or in contract. There shall further be no duty or obligation on the part of the Company to respond to, investigate, or defend anyone for any such claim, demand or suit.

* * * * *

The Complaint in Paragraphs 19 and 20 alleges that Hales forcibly entered the Plaintiff's home and committed "numerous sexual assaults and batteries on" Plaintiff. Paragraph 21 alleges that "Hales was subsequently charged and convicted in Hillsborough County Court of felony sexual battery and is currently serving a lengthy term of incarceration in state prison system." Accordingly, to the extent that SWS's liability for damages for Plaintiff's "bodily injury" arises out of actual or alleged criminal act(s) as described in Parts A.1. through A.6. of the Criminal Acts Exclusion and the Criminal Acts Exclusion as a whole, First Mercury reserves the right to deny coverage under Coverage A and Coverage B for SWS. In addition, although Plaintiff has not alleged a claim for punitive damages at this time, if Plaintiff later amends her Complaint to add such a claim, there would be no coverage for these punitive damages as indicated in Part B of the Criminal Acts Exclusion.

We also wish to direct your attention to Endorsement CVX-E01 (07/2001), which reads as follows:

### ERRORS AND OMISSIONS

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Subject to all of the terms, limitations, exclusions and conditions of the policy and all the endorsements attached thereto, we will pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages resulting from the negligent acts, errors or omissions of the named Insured and arising out of the operations of the named Insured to which this insurance applies.

First Mercury reserves its right to deny coverage under this Endorsement to the extent Plaintiff's damages for which you are liable, and in particular any damages recoverable on Plaintiff's *respondeat superior* and vicarious liability claims, do not result from your "negligent acts, errors or omissions" and/or do not arise out of your operations to which this insurance applies. Furthermore, First Mercury reserves its right to deny coverage available under this Endorsement for all of Plaintiff's claims against you to the extent that coverage

6

is excluded under the Criminal Acts Exclusion or under any of the other "terms, limitations, exclusions and conditions of the policy" discussed above in this reservation of rights letter.

First Mercury reserves its right to review any claim, additional claims or amendments to the Complaint and to make a separate determination as to other relevant terms, conditions and exclusions. Our decision on coverage is based only on the facts as presented to date and should not be construed as applicable to a new claim or any amendment to the complaint. Our right to receive notice of a new claim or amendment to the complaint is reserved, as are the notice conditions of the Policy. Nothing in this letter is to be construed as a waiver by First Mercury of any policy terms, conditions, exclusions or limitations not expressed in this letter or as a waiver, relinquishment, or other limitation of First Mercury's rights.

Should you have any additional facts or legal authorities you believe we should consider in our coverage analysis, please send them to us for consideration. Also, if you are served with any additional demands or pleadings, please forward them to us immediately so that we can review our coverage position. In addition, please sign and return the enclosed Retention of Independent Counsel form within the next ten (10) days. If you have any questions relative to this claim, or this letter, please contact me, as the examiner handling your claim, at (248) 213.5144.

Very truly yours,

Kathy A. Reno, AIC
Claim Examiner
kathy.reno@firstmercury.com
DD: 248.213.5144
Fax: 248.357.5036

cc:     Alan Bell
        alan@abinsurance.com

7

**RETENTION OF INDEPENDENT COUNSEL FORM**

(Please sign and return this form **within 10 days**)

1.  SWS LLC dba Securewatch agrees to the retention of **David Nilsen** with the law firm of **Quintairos, Prieto, Wood & Boyer, P.A.** as mutually agreeable independent counsel to represent its interests concerning the lawsuit styled *Hearn v. ADT & SWS LLC d/b/a Secure Automation LLC f/k/a Securewatch*, Case No. 13 CA-015113, in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida.

                           **SWS LLC dba Securewatch**

Date: _____          Signed: _____

                                Print Name: _____

                                Print Title: _____

2.  SWS LLC dba Securewatch objects to being represented by **David Nilsen** with the law firm of **Quintairos, Prieto, Wood & Boyer, P.A.** concerning the lawsuit styled *Hearn v. ADT & SWS LLC d/b/a Secure Automation LLC f/k/a Securewatch*, Case No. 13 CA-015113, in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida.

    Reason:

                           **SWS LLC dba Securewatch**

Date: _____          Signed: _____

                                Print Name: _____

                                Print Title: _____



**FIRST MERCURY**
A member of the Crum & Forster Enterprise

26600 Telegraph Road
Southfield, MI 48033
(800) 762-6837
(248)358-4010
(248) 358-2459 fax

March 14, 2014

**VIA REGULAR US MAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED 7013 2250 0002 3680 7503**

Greg Reynolds
Litigation and Claims Manager  -  Tyco
4700 Exchange Court, Suite 300
Boca Raton, FL 33431

RE:     *Hearn v. ADT LLC d/b/a ADT Security Services & SWS LLC d/b/a Secure Automation LLC f/k/a Securewatch*, Case No. 13-CA-015113, in the Circuit Court in and for Hillsborough County, Florida
          **ACCEPTANCE OF TENDER & RESERVATION OF RIGHTS**
          Claimant:     Nicole Hearn
          Additional Insured:    ADT LLC d/b/a ADT Security Services
          D/L:         12/30/11
          Our File No.:   30200
          Policy No.:     FMMI024868
          Effective Dates: 3/15/11 to 3/15/12

Dear Mr. Reynolds:

I am handling the above-captioned matter on behalf of First Mercury Insurance Company ("First Mercury"). This letter acknowledges receipt of a complaint filed in the above-referenced suit and a tender letter from Michael J. Cappo with Shook, Hardy & Bacon LLP on behalf of ADT LLC. The lawsuit was filed in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida and is captioned *Nicole Hearn v ADT LLC dba ADT Security Services and SWS LLC dba Secure Automation, LLC fka Securewatch*, Case Number 13-CA-15113 (sometimes referred to hereafter as the "Lawsuit").

The purpose of this letter is to advise you of First Mercury's coverage position as it relates to the claims made against ADT LLC f/k/a ADT Security Services, Inc. ("you" or "ADT") by the Plaintiff, Nicole Hearn, in the Lawsuit. In considering ADT's tender and request for coverage, we have reviewed the policy referenced above, as well as the claims that Plaintiff has asserted in her Complaint. No other policies were considered.

Based on the policy provisions outlined below, First Mercury accepts ADT's tender and will assist ADT in its defense of the Lawsuit as an additional insured under the policy subject to a full reservation of First Mercury's rights. We have assigned the law firm of Fulmer, LeRoy, Albee, Baumann, PLC and specifically, its attorney Sean M. Conahan to assist in your defense. Please advise whether you agree to representation by Fulmer, LeRoy, Albee, Baumann, PLC by completing the enclosed Retention of Independent Counsel Form and returning it to us within ten (10) days.

**EXHIBIT**

E

104

Below is a summary of the allegations made in the Complaint filed by Plaintiff in the Lawsuit. By describing the allegations, we are not commenting upon their accuracy or legitimacy. We are simply reciting the allegations for the purposes of discussing the various coverage issues. If you are aware of any additional information that you believe should influence the insurance coverage issues discussed in this letter, or if you believe that we have not accurately characterized these allegations, please forward that information to us and we will consider the possible effect it may have on coverage.

The Complaint alleges that ADT is a security services company and that SWS was an authorized dealer of ADT products and services. Paragraphs 6–8. SWS hired and trained personnel to sell ADT products and services "under the auspices of ADT," including using ADT uniforms and ADT-approved sales methods and techniques, and that "[f]or all practical purposes," SWS salespeople acted as authorized representatives, employees, and agents of ADT. Paragraphs 9-10.

The Complaint further alleges that in late 2011, Rashad Hales applied for employment as a sales representative with SWS. Paragraph 15. Hales was hired "as an ADT sale representative" thereafter. Paragraph 16. On December 30, 2011, Hales was transported by SWS and/or ADT to Plaintiff's neighborhood for the purpose of making residential sales calls. Paragraphs 17–18. Hales approached Plaintiff's residence and knocked on her door, identifying himself as an SWS and/or ADT employee. Paragraph 19. Plaintiff declined to purchase ADT products or services and closed the door. Paragraph 19. Hales reappeared at Plaintiff's door "within minutes" armed with a knife, forced his way into Plaintiff's home, and battered, sexually assaulted, and threatened to kill her. Paragraph 19. Hales left Plaintiff's residence later that afternoon and rejoined with his SWS/ADT supervisor, who Hales told about his assault on Plaintiff. Paragraph 20. The supervisor called the police, who arrested Hales. Paragraph 20. Hales was charged and convicted of felony sexual battery and is presently incarcerated. Paragraph 21.

The Complaint alleges four claims against ADT: that ADT was negligent with regard to its hiring of Hales (Paragraphs 22–28); that ADT was negligent in its training and supervision of Hales (Paragraphs 29–33);and that SWS is liable for the acts of its employee or agent, Hales, under the theories of *respondeat superior* and vicarious liability (Paragraphs 34–40). The Complaint further alleges that as a result of Hales's attack, Plaintiff suffered physical injuries, psychological injuries, physical restraint of her liberty, loss of present and future earnings, and loss of earning capacity, and she seeks to recover both economic and noneconomic damages. Paragraphs 28, 33, 40, 47.

### THE FIRST MERCURY INSURANCE POLICY &
### BASIS FOR FIRST MERCURY'S RESERVATION OF RIGHTS

First Mercury issued a commercial general liability insurance policy, policy number FMMI024868, to the Named Insured SWS LLC dba Securewatch, effective during the period from March 15, 2011 to March 15, 2012. The Policy provides commercial general liability insurance coverage to the Named Insured, SWS, with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate, and a $1,000 per claim deductible.

Pursuant to the Policy's Additional Insured Endorsement, Endorsement number CG 20 10 07 04, Section II of the Policy is amended to add as an additional insured "Any Person or Organization as Required By Written Contract." The "Written Contract" that requires SWS to list ADT as an additional insured is the Authorized Dealer Agreement, executed on July 29, 2008, by ADT and SWS, and which incorporates by reference the ADT Dealer Program Guidelines. The Guidelines require SWS to maintain certain levels of

minimum insurance coverage and further require that SWS "must show ADT as an additional insured on each of the above referenced policies." (Guidelines, Part 2 p.13).

However, under the terms of the Additional Insured Endorsement, ADT is only an additional insured "with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by" SWS's "acts or omissions" or the "acts or omissions of those acting on" behalf of SWS and in the performance of SWS's ongoing operations. (Endorsement number CG 20 10 07 04). Accordingly, to the extent Plaintiff's "bodily injury" or "personal and advertising injury" were not caused in whole or in part by the acts or omissions of SWS or someone acting on SWS's behalf, ADT is not an additional insured under the Policy and its liability for Plaintiff's damages is not covered under the Policy.

As an additional insured, coverage available to ADT under the Policy is also limited by the terms, conditions, and exclusions found within the Policy and its endorsements, including the limitation discussed in the preceding paragraph. We wish to direct your attention to the Policy's Coverage A insuring agreement, which is amended by Endorsement CG 00 57 09 99 to read as follows:

### AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **1. Insuring Agreement of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" ... only if:

**(1)** The "bodily injury" ... is caused by an "occurrence" that takes place in the "coverage territory"; and

**(2)** The "bodily injury" ... occurs during the policy period;

\* \* \* \* \*

Certain terms used within Coverage A are defined in **SECTION V – DEFINITIONS**, including the following:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \* \*

(Form CG 00 01 01 96, pp. 10, 12). First Mercury reserves its right to deny coverage under Coverage A to the extent that Plaintiff's "bodily injury" was not caused by an "occurrence" as those terms are defined in the Policy.

We also wish to direct your attention to the Coverage B, Personal and Advertising Injury Liability, insuring agreement, which provides, in pertinent part:

### COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    This insurance applies to:

        **(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done for you or by you;

\* \* \*

(Form CG 00 01 01 96, p. 4). As used in Coverage B, "Personal injury" is defined as follows:

**13.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** Oral or written publication of material that violates a person's right of privacy.

(Form CG 00 01 01 96, p. 12).

First Mercury reserves its right to deny coverage under Coverage B to the extent Plaintiff did not suffer any "Personal Injury" as that term is defined in the Policy. First Mercury also reserves its right to deny coverage under Coverage B to the extent that any "Personal Injury" suffered by Plaintiff arose out of (1) something other than one of the enumerated offenses in **Section V.13**; or (2) an offense that did not arise out of your business.

The coverage provided under Coverage A and Coverage B is subject to certain terms, conditions, definitions, and exclusions found in the Policy and its Endorsements. Endorsement CVX-GL-0313 (10/90) states as follows:

**EXCLUSION**
**PUNITIVE OR EXEMPLARY DAMAGES**
**CRIMINAL ACTS, DECEPTIVE OR FRAUDULENT TRADE PRACTICES**

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Notwithstanding anything to the contrary contained in the policy to which this endorsement attaches, or any endorsement scheduled on the declarations of this policy, or any endorsement subsequently attached to this policy, it is agreed that this insurance does not apply to:

A. "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" arising out of any actual or alleged

"criminal act", **or**

deceptive or fraudulent trade practice, **or**

violation of the Racketeering Influenced and Corrupt Organization Act or any similar act, whether Federal, State or Municipal, **or**

unfair business practice, trade practice or similar activity:

1. by any insured; **or**

2. by any employee of any insured; **or**

3. by any person or entity for whom any insured is legally liable; **or**

4. arising out of, caused by, or related to the employment practices of any insured including but not limited to, negligent hiring, negligent hiring practices, negligent training, or negligent supervision; **or**

5. arising out of and in the course of, or as a consequence of, employment by any insured; **or**

6. arising out of and in the course of, or as a consequence of, association with any insured.

This exclusion applies:

(a) whether any insured may or may not be liable as an employer or in any other capacity; and

(b) to any obligation to contribute to, share damages with, repay or indemnify someone else who must pay damages because of the "Bodily Injury," "Property Damage," "Personal Injury," or "Advertising injury."

"Criminal Act" means any act committed in violation of a law prohibiting it, or omitted in violation of a law ordering it.

B. Any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs whether or not such damages, related interest or costs are characterized as punitive or exemplary damages.

It is the intent of this endorsement to exclude from this insurance all claims, demands, or suits related to the above described activities which claim, demand or suit advocates any theory of liability, whether sounding in, or alleging tort, or in contract. There shall further be no duty or obligation on the part of the Company to respond to, investigate, or defend anyone for any such claim, demand or suit.

\* \* \* \* \*

The Complaint in Paragraphs 19 and 20 alleges that Hales forcibly entered the Plaintiff's home and committed "numerous sexual assaults and batteries on" Plaintiff. Paragraph 21 alleges that "Hales was subsequently charged and convicted in Hillsborough County Court of felony sexual battery and is currently serving a lengthy term of incarceration in state prison system." Accordingly, to the extent that ADT's liability for damages for Plaintiff's "bodily injury" arises out of actual or alleged criminal act(s) as described in Parts A.1. through A.6. of the Criminal Acts Exclusion and the Criminal Acts Exclusion as a whole, First Mercury reserves the right to deny coverage under Coverage A and Coverage B for ADT. In addition, although Plaintiff has not alleged a claim for punitive damages at this time, if Plaintiff later amends her Complaint to add such a claim, there would be no coverage for these punitive damages as indicated in Part B of the Criminal Acts Exclusion.

We also wish to direct your attention to Endorsement CVX-E01 (07/2001), which reads as follows:

### ERRORS AND OMISSIONS

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Subject to all of the terms, limitations, exclusions and conditions of the policy and all the endorsements attached thereto, we will pay on behalf of the Insured those sums which the Insured shall become legally obligated to pay as damages resulting from the negligent acts, errors or omissions of the named Insured and arising out of the operations of the named Insured to which this insurance applies.

First Mercury reserves its right to deny coverage under this Endorsement to the extent Plaintiff's damages for which you are liable, and in particular any damages recoverable on Plaintiff's *respondeat superior* and vicarious liability claims, do not result from named Insured SWS's "negligent acts, errors or omissions" or do not arise out of SWS's operations to which this insurance applies. Furthermore, First Mercury reserves its right to deny coverage available under this Endorsement for all of Plaintiff's claims against you to the extent that coverage is excluded under the Criminal Acts Exclusion or under any of the other "terms, limitations, exclusions and conditions of the policy" discussed above in this reservation of rights letter.

First Mercury reserves its right to review any claim, additional claims or amendments to the Complaint and to make a separate determination as to other relevant terms, conditions and exclusions. Our decision on coverage is based only on the facts as presented to date and should not be construed as applicable to a new claim or any amendment to the complaint. Our right to receive notice of a new claim or amendment to the complaint is reserved, as are the notice conditions of the Policy. Nothing in this letter is to be construed as a waiver by First Mercury of any policy terms, conditions, exclusions or limitations not expressed in this letter or as a waiver, relinquishment, or other limitation of First Mercury's rights.

Should you have any additional facts or legal authorities you believe we should consider in our coverage analysis, please send them to us for consideration. Also, if you are served with any additional demands or pleadings, please forward them to us immediately so that we can review our coverage position. In addition, please sign and return the enclosed Retention of Independent Counsel form within the next ten (10) days. If you have any questions relative to this claim, or this letter, please contact me, as the examiner handling your claim, at (248) 213.5144.

Very truly yours,

Kathy A. Reno, AIC
Claim Examiner
kathy.reno@firstmercury.com
DD: 248.213.5144
Fax: 248.357.5036

cc:     Michael J. Cappo
        Shook, Hardy & Bacon LLP
        2555 Grand Boulevard
        Kansas City, Missouri 64108-2613
        mcappo@shb.com

## RETENTION OF INDEPENDENT COUNSEL FORM

(Please sign and return this form **within 10 days**)

1. ADT LLC f/k/a ADT Security Services agrees to the retention of **Sean M Conahan** with the law firm of Fulmer, LeRoy, Albee, Baumann, PLC as mutually agreeable independent counsel to represent its interests concerning the lawsuit styled *Hearn v. ADT & SWS LLC d/b/a Secure Automation LLC f/k/a Securewatch*, Case No. 13 CA-015113, in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida.

**ADT LLC f/k/a ADT Security Services**

Date: _____      Signed: _____

Print Name: _____

Print Title: _____

2. ADT LLC f/k/a ADT Security Services objects to being represented by **Sean M Conahan** with the law firm of Fulmer, LeRoy, Albee, Baumann, PLC concerning the lawsuit styled *Hearn v. ADT & SWS LLC d/b/a Secure Automation LLC f/k/a Securewatch*, Case No. 13 CA-015113, in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida.

Reason:

**ADT LLC f/k/a ADT Security Services**

Date: _____      Signed: _____

Print Name: _____

Print Title: _____